1  Steven N. Kurtz, Esq. [SBN 125972]
2  Anne C. Manalili, Esq. [SBN 193483]
   **LEVINSON ARSHONSKY & KURTZ, LLP**
3  15303 Ventura Blvd., Suite 1650
   Sherman Oaks, CA 91403
4  Telephone:  (818) 382-3434
   Facsimile: (818) 382-3433
5  skurtz@laklawyers.com
   amanalili@laklawyers.com
6  Attorneys for Plaintiff
7  PROSPERITY FUNDING, INC.,
   a North Carolina corporation



FILED
CLERK, U.S. DISTRICT COURT

MAY 1 0 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11  PROSPERITY FUNDING, INC., a North       CASE NO. **CV 13-03350-JCG**
    Carolina corporation
12
                    Plaintiff,              **COMPLAINT FOR:**
13
         vs.                                **(1-3) Breach of Contract Pursuant
14                                          to the CA Commercial Code;**
    STATE FISH CO., INC., a California       **(4-6) Common Count – Services
15  corporation; CALPACK FOODS LLC, a        Rendered;**
    California limited liability company; and **(7-9) Account Stated;**
16  DOES 1-10, inclusive,                    **(10)  Accounting**
17                  Defendants.
18
19        Plaintiff Prosperity Funding, Inc., a North Carolina corporation ("Plaintiff" or
20  "Prosperity"), by and through its undersigned counsel, hereby alleges as follows:
21                        <u>**PARTY ALLEGATIONS**</u>
22        1.    Plaintiff is, and at all relevant times hereto was, a corporation formed and
23  existing under the laws of the state of North Carolina with its principal place of
24  business in Raleigh, North Carolina.  Plaintiff is in the business of factoring and asset-
25  based lending.
26        2.    Plaintiff is informed and believes, and based thereon alleges, that
27  Defendant State Fish Co., Inc. ("State Fish") is a corporation formed and existing

28

LEVINSON ARSHONSKY & KURTZ, LLP

2176-004/192047

1  under the laws of the state of California, with its principal place of business in San

2  Pedro, California.

3      3.      Plaintiff is informed and believes, and based thereon alleges, that

4  Defendant CalPack Foods LLC ("CalPack") is a limited liability company formed and

5  existing under the laws of the state of California, with its principal place of business in

6  San Pedro, California.  Plaintiff is informed and believes, and based thereon alleges,

7  that all of CalPack's members are citizens of the State of California.

8      4.      Plaintiff is unaware of the true names and capacities of the Defendants

9  sued herein as Does 1 through 10, inclusive, and therefore sues those Defendants by

10  such fictitious names ("Doe Defendants").  Plaintiff will amend this Complaint to

11  state the true names and capacities of these Doe defendants when ascertained.

12      5.      Plaintiff is informed and believes, and based thereon alleges, that each of

13  the Doe defendants are the employees, agents, independent contracts, or other person

14  who acted on behalf of the other defendants in this action and at all times mentioned

15  herein, each defendant was an agent of each of the other defendants, acted jointly with

16  the other defendants, assisted or acted in concert with the other defendants, and

17  otherwise participated in, or directed, or otherwise was responsible for, directly or

18  indirectly, the occurrences alleged herein.

19      6.      Plaintiff is informed and believes, and based thereon alleges, that the

20  defendants named herein, and each of them, accepted and retained the benefits of the

21  acts of the other defendants, as herein alleged, and adopted, cooperated in and/or

22  ratified such acts.

23              **JURISDICTION AND VENUE ALLEGATIONS**

24      7.      This Court has original subject matter jurisdiction over this matter

25  pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between the

26  parties.  Plaintiff is a citizen of the state of North Carolina.  Defendants State Fish and

27  CalPack are citizens of the state of California.

28

LEVINSON ARSHONSKY & KURTZ, LLP

2176-004/192047

8.    Additionally, the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00 as specified in 28 U.S.C. § 1332.

9.    Venue lies in this court pursuant to 28 U.S.C. § 1391(a) in that jurisdiction is founded only on diversity and this district is one in which a substantial part of the events or omissions giving rise to the claims occurred.

10.    Personal jurisdiction over Defendants is proper because Defendants are all citizens of the state of California.

## ALTER EGO ALLEGATIONS

11.    Plaintiff is informed and believes, and based thereon alleges, that there exists, and at all material times there existed, a unity of interest and ownership between State Fish and CalPack such that any individuality and separateness between them has ceased to exist in that:

    (a)    State Fish and Cal Pack used the other's assets for their own purposes;

    (b)    State Fish and Cal Pack held themselves out as liable for each other's debts;

    (c)    State Fish and CalPack shared the same offices, employees, officers and directors;

    (d)    State Fish and CalPack disregarded the corporate formalities; and

    (e)    State Fish used CalPack as a mere shell or conduit for its own affairs.

12.    Plaintiff is informed and believes, and based thereon alleges, that State Fish acquired CalPack and that CalPack is a division of State Fish and subject to State Fish's control.

13.    Plaintiff is informed and believes, and based thereon alleges, that at all material times State Fish controlled CalPack and on that basis alleges that CalPack was a mere shell of State Fish.

14.    Plaintiff is further informed and believes, and based thereon alleges, that and at all material times CalPack failed to maintain an identity and existence separate

LEVINSON ARSHONSKY & KURTZ, LLP

3
COMPLAINT

2176-004/192047

1    and distinct from State Fish and that CalPack was merely a business conduit and alter

2    ego of State Fish and that adherence to the fiction of the separate legal existence of

3    CalPack as an entity distinct from State Fish would permit an abuse of the corporate

4    privilege, would promote injustice, and would sanction a fraud upon the Plaintiff.

5    ## THE FACTORING AGREEMENT WITH A+ STAFFING, LLC

6        15.    On or about July 12, 2011, Plaintiff and non-party A+Staffing, LLC

7    ("A+Staffing") entered into a written Factoring and Security Agreement (the

8    "Factoring Agreement"), pursuant to which, among other things, Plaintiff agreed to

9    purchase Accounts[1], from A+Staffing under an agreed-upon formula based upon

10   A+Staffing's eligible accounts receivable.  A true and correct copy of the Factoring

11   Agreement is attached hereto as **Exhibit ("Ex.") "A"** and fully incorporated herein by

12   this reference.

13       16.    Plaintiff is informed and believes, and based thereon alleges, that

14   A+Staffing was in the business of providing and coordinating staffing services for

15   various companies.

16       17.    Pursuant to the Factoring Agreement, A+Staffing granted a security

17   interest in its various assets to Plaintiff.  On or about June 3, 2011, Plaintiff perfected

18   its security interest in various assets of A+Staffing by, among other things, filing a

19   UCC-1 Financing Statement with the California Secretary of State bearing filing

20   number 11-7271852650 (the "UCC-1") and a UCC-3 Financing Statement

21   Amendment bearing filing number 11-72815061 ("UCC-3").  True and correct copies

22   of the UCC-1 and UCC-3 are collectively attached hereto as **Ex. "B"** and fully

23   incorporated herein by this reference.

---

25   [1] Pursuant to the Uniform Commercial Code as adopted in California as the
26   Commercial Code ("Comml. Code"), specifically, Section 9102(a)(2), the term
     "account" is defined as follows:

27        "Account" . . . means a right to payment of a monetary obligation,
          whether or not earned by performance, (i) for property that has been or is
28        to be sold, leased, licensed, assigned, or otherwise disposed of, (ii) for
          services rendered or to be rendered, . . ."

LEVINSON ARSHONSKY & KURTZ, LLP

2176-004/192047

18.     As a factor, Plaintiff purchased Accounts from A+Staffing and provided notice to all Account Debtors[2] that payment on all obligations owed to A+Staffing were to be paid to Plaintiff.  As a debtor that has sold an account, A+Staffing did not retain any legal or equitable interest in the account sold[3].

19.     Pursuant to the Factoring Agreement, Plaintiff received a Schedule of Accounts from A+Staffing identifying the invoices that were eligible for purchase along with the name of the Account Debtor.  A+Staffing also provided Plaintiff with copies of the invoices purchased.  Included on the invoices and the Schedule of Accounts were invoices for services provided by A+Staffing to State Fish and CalPack with entries identifying the following accounts debtors: (a) State Fish/Cal Pack, (b) State Fish 1130 (plant 1), (c) State Fish 505 (plant 2), and (d) State Fish 700 (plant 3).

20.     Pursuant to the Factoring Agreement and Commercial Code § 9406(a)[4], A+Staffing sent a Notice of Assignment ("Notice of Assignment") addressed to Defendant State Fish on September 16, 2011 at its address in San Pedro which is the same business address as CalPack's.  In summary, the Notice of Assignment

[2] Comml. Code § 9102(a)(3) defines "Account debtor" as "...a person obligated on an account, chattel paper, or general intangible."

[3] Comml. Code § 9318(a) provides: "A debtor that has sold an account, chattel paper, payment intangible, or promissory note does not retain a legal or equitable interest in the collateral sold."

[4] Comml. Code § 9406(a) provides, in relevant part, that "an account debtor on an account, chattel paper, or a payment intangible may discharge its obligation by paying the assignor until, but not after, the account debtor receives *a notification, authenticated by the assignor or the assignee, that the amount due or to become due has been assigned and that payment is to be made to the assignee.*  After receipt of the notification, the account debtor may discharge its obligation by paying the assignee and may not discharge the obligation by paying the assignor." (Emphasis added.)

LEVINSON ARSHONSKY & KURTZ, LLP

2176-004/192047

1   (1) advised State Fish that its invoices were assigned to Prosperity Funding for

2   payment, (2) directed that all payments should be made payable to Prosperity Funding

3   at the designated address, (3) that payments remitted to any other address would not

4   constitute payment of the invoice, and (4) that all payments should be remitted to

5   Prosperity Funding <u>until notified otherwise, *in writing, by Prosperity Funding.*</u> In

6   addition, the Notice of Assignment requested that State Fish sign the Notice of

7   Assignment in acceptance of the terms and return the signed copy to A+Staffing.

8   State Fish, through its HR Manager Kim Mendoza, signed the Notice of Assignment

9   and faxed it back to A+Staffing on or about September 22, 2011. A true and correct

10   copy of the Notice of Assignment signed by State Fish is attached hereto as **Ex. "C"**

11   and fully incorporated herein by this reference.

12       21.    In addition to the separate Notice of Assignment, each of the invoices

13   sent to State Fish and Cal Pack contained language specifically directing payment on

14   the invoices to be made to Prosperity Funding to its address in Charlotte, North

15   Carolina.

16       22.    Pursuant to their receipt of the Notice of Assignment, as the same

17   individual authorized to receive notice on behalf of State Fish was the same individual

18   authorized to do so on behalf of Cal Pack, both Defendants State Fish and CalPack

19   began making payments on invoices directly to Plaintiff as directed in the Notice of

20   Assignment.

21       23.    From time to time, Plaintiff would spot check and verify invoices

22   purchased from the Account Debtors including State Fish and State Fish/Cal Pack

23   invoices or would otherwise communicate with State Fish regarding the invoices

24   purchased, including the State Fish/Cal Pack invoices. On all such occasions, Plaintiff

25   would communicate with the same individual on all invoices.

26       24.    However, in November of 2012, State Fish and Cal Pack ceased making

27   payments to Plaintiff resulting in combined unpaid invoices in an amount of at least

28   $228,584.97.00 (the "Unpaid Invoices"). Of these total unpaid invoices,

*LEVINSON ARSHONSKY & KURTZ, LLP*

1  approximately $62,660.11 were for invoices labeled as "State Fish/Cal Pack Foods"

2  (the "Cal Pack Unpaid Invoices") and approximately $165,924.86 were for invoices

3  labeled as "State Fish and HPCC Food Svcs., Plant 1," "State Fish Co. Inc., Plant 2,"

4  or "State Fish Co. Inc., Plant 3" (the "State Fish Unpaid Invoices").

5      25.    Plaintiff is informed and believes, and based thereon alleges, that at least

6  as to some of the Unpaid Invoices, State Fish and Cal Pack paid A+Staffing directly,

7  despite the fact that neither State Fish nor Cal Pack ever received a <u>written notice</u>

8  <u>from Plaintiff</u> authorizing payment to A+Staffing.

9      26.    Plaintiff has demanded but State Fish and Cal Pack have refused to pay

10  Plaintiff on the Unpaid Invoices.

11  ## FIRST CLAIM FOR RELIEF

12  ## (Breach of Contract Pursuant to the CA Commercial Code

13  ## Against All Defendants)

14      27.    Plaintiff refers to and incorporates by reference paragraphs 1 through 26

15  of the Complaint as though set forth fully herein.

16      28.    As set forth *supra*, Plaintiff and A+Staffing entered into a Factoring

17  Agreement wherein A+Staffing sold invoices to Plaintiff and granted a security

18  interest in its Accounts to Plaintiff.

19      29.    Defendants State Fish and CalPack received notice of the assignment of

20  the accounts pursuant to Comml. Code § 9406. [Ex. "C."]

21      30.    As an assignee, Plaintiff is the owner of the A+Staffing accounts and is

22  entitled to receipt of payments owed from State Fish and CalPack.  A+Staffing

23  retained no further interest in the accounts pursuant to the Comml. Code § 9318.

24      31.    Upon State Fish's and CalPack's receipt of notification of the

25  assignment, a contract was formed between Plaintiff and State Fish and Plaintiff and

26  CalPack, pursuant to the Commercial Code, in particular, Sections 9102(a)(1) and (3)

27  and 9406(a).  As the Account Debtors under Comml. Code §§ 9102(a) (1) and (3),

28

LEVINSON ARSHONSKY & KURTZ, LLP

1  State Fish and Cal Pack were obligated under Comml. Code § 9406(a) to make

2  payments owed to A+Staffing directly and solely to Plaintiff (the assignee).

3       32.    State Fish's and CalPack's assent to this contractual obligation under

4  A+Staffing's accounts was not required pursuant to Comml. Code §§ 9406(d)(1) and

5  (2).

6       33.    Plaintiff has performed all of its obligations, as it purchased invoices

7  from A+Staffing and provided advanced funding to A+Staffing and Plaintiff has not

8  waived the performance of State Fish's or CalPack's obligations to make payment to

9  Plaintiff.  Moreover, State Fish and CalPack received the staffing services from

10 A+Staffing as evidenced by the invoices which were assigned for payment to Plaintiff.

11      34.    Although Plaintiff has demanded payment on the Unpaid Invoices,

12 neither State Fish nor Cal Pack have tendered any payments to Plaintiff.  The Unpaid

13 Invoices are presently due and owing to Plaintiff.  The amount of the payments that

14 remain outstanding with respect to the Unpaid Invoices is at least $228,584.97

15 exclusive of interest and attorney's fees.

16      35.    Accordingly, State Fish and Cal Pack have breached their obligations

17 under the Commercial Code by failing to make payment to Plaintiff.

18      36.    State Fish and Cal Pack are equally liable on the total Unpaid Invoices

19 amounts as the alter egos of one another as there existed, at all material times, a unity

20 of interest and ownership between State Fish and CalPack such that any individuality

21 and separateness between them has ceased to exist in that:

22      (a)   State Fish and Cal Pack used the other's assets for their own purposes;

23      (b)   State Fish and Cal Pack held themselves out as liable for each other's

24            debts;

25      (c)   State Fish and CalPack shared the same offices, employees, officers

26            and directors;

27      (d)   State Fish and CalPack disregarded the corporate formalities; and

28      (e)   State Fish used CalPack as a mere shell or conduit for its own affairs.

LEVINSON ARSHONSKY & KURTZ, LLP

8
COMPLAINT

2176-004/192047

37.   Allowing State Fish and CalPack to adhere to the fiction of a separate legal existence as separate and distinct entities would permit an abuse of the corporate privilege, would promote an injustice, and would sanction a fraud upon the Plaintiff who reasonably and justifiably believed that they were one and the same entity as they held themselves out as such.

38.   As a direct result of Defendants' breach of contract, Plaintiff has been damaged in the amount of at least $228,584.97, due and owing as of December 2012, exclusive of interest, attorney's fees and other charges that continue to accrue.

## SECOND CLAIM FOR RELIEF

### (Breach of Contract Pursuant to the CA Commercial Code
### Against Defendants State Fish and Does 1-5)

39.   Plaintiff refers to and incorporates by reference paragraphs 1-10 and 15-26 of the Complaint as though set forth fully herein.

40.   As set forth *supra*, Plaintiff and A+Staffing entered into a Factoring Agreement wherein A+Staffing sold invoices to Plaintiff and granted a security interest in its Accounts to Plaintiff.

41.   Defendant State Fish received notice of the assignment of the accounts pursuant to Comml. Code § 9406. [Ex. "C."]

42.   As an assignee, Plaintiff is the owner of the A+Staffing accounts and is entitled to receipt of payments owed from State Fish.  A+Staffing retained no further interest in the accounts pursuant to the Comml. Code § 9318.

43.   Upon State Fish's receipt of notification of the assignment, a contract was formed between Plaintiff and State Fish pursuant to the California Commercial Code, in particular, Sections 9102(a)(1) and (3) and 9406(a).  As the Account Debtors under Comml. Code §§ 9102(a) (1) and (3), State Fish was obligated under Comml. Code § 9406(a) to make payments owed to A+Staffing directly and solely to Plaintiff (the assignee).

LEVINSON ARSHONSKY & KURTZ, LLP

2176-004/192047

44.     State Fish's assent to this contractual obligation under A+Staffing's accounts was not required pursuant to Comml. Code §§ 9406(d)(1) and (2).

45.     Plaintiff has performed all of its obligations, as it purchased the State Fish Unpaid Invoices from A+Staffing and has not waived the performance of State Fish's obligations to make payment to Plaintiff.

46.     Although Plaintiff has demanded payment on the State Fish Unpaid Invoices, State Fish has refused to tender any payments to Plaintiff. The State Fish Unpaid Invoices are presently due and owing to Plaintiff. The amount of the payments that remain outstanding with respect to the State Fish Unpaid Invoices is $165,924.86, exclusive of interest and attorney's fees.

47.     Accordingly, State Fish has breached its obligations under the Commercial Code by failing to make payment to Plaintiff.

48.     As a direct result of State Fish's breach of contract, Plaintiff has been damaged in the amount of at least $165,924.86, due and owing as of December 2012, exclusive of interest, attorney's fees and other charges that continue to accrue.

## THIRD CLAIM FOR RELIEF

### (Breach of Contract Pursuant to the CA Commercial Code
### Against Defendants Cal Pack and Does 6-10)

49.     Plaintiff refers to and incorporates by reference paragraphs 1-10 and 15-26 of the Complaint as though set forth fully herein.

50.     As set forth supra, Plaintiff and A+Staffing entered into a Factoring Agreement wherein A+Staffing sold invoices to Plaintiff and granted a security interest in its Accounts to Plaintiff.

51.     Defendant Cal Pack received notice of the assignment of the accounts pursuant to Comml. Code § 9406. [Ex. "C."]

52.     As an assignee, Plaintiff is the owner of the A+Staffing accounts and is entitled to receipt of payments owed from Cal Pack. A+Staffing retained no further interest in the accounts pursuant to the Comml. Code § 9318.

LEVINSON ARSHONSKY & KURTZ, LLP

2176-004/192047

53.     Upon Cal Pack's receipt of notification of the assignment, a contract was formed between Plaintiff and Cal Pack pursuant to the California Commercial Code, in particular, Sections 9102(a)(1) and (3) and 9406(a).  As the Account Debtors under Comml. Code §§ 9102(a) (1) and (3), Cal Pack was obligated under Comml. Code § 9406(a) to make payments owed to A+Staffing directly and solely to Plaintiff (the assignee).

54.     Cal Pack's assent to this contractual obligation under A+Staffing's accounts was not required pursuant to Comml. Code §§ 9406(d)(1) and (2).

55.     Plaintiff has performed all of its obligations, as it purchased the Cal Pack Unpaid Invoices from A+Staffing and has not waived the performance of Cal Pack's obligations to make payment to Plaintiff.

56.     Although Plaintiff has demanded payment on the Cal Pack Unpaid Invoices, Cal Pack has refused to tender any payments to Plaintiff.  The Cal Pack Unpaid Invoices are presently due and owing to Plaintiff.  The amount of the payments that remain outstanding with respect to the Cal Pack Unpaid Invoices is $62,660.11, exclusive of interest and attorney's fees.

57.     Accordingly, Cal Pack has breached its obligations under the Commercial Code by failing to make payment to Plaintiff.

58.     As a direct result of Cal Pack's breach of contract, Plaintiff has been damaged in the amount of at least $62,660.11, due and owing as of December 2012, exclusive of interest, attorney's fees and other charges that continue to accrue.

## FOURTH CLAIM FOR RELIEF

### (Common Count—Services Rendered Against All Defendants)

59.     Plaintiff refers to and incorporates by reference paragraphs 1 through 26 of the Complaint as though set forth fully herein.

60.     As set forth supra, A+Staffing provided services to State Fish and CalPack.

LEVINSON ARSHONSKY & KURTZ, LLP

2176-004/192047

1    61.    As set forth supra, Plaintiff was the owner of and the assignee of the

2    rights to payment on all invoices representing the services provided for State Fish and

3    Cal Pack by A+Staffing, pursuant to Comml. Code §§ 9318 and 9406.  As an

4    assignee, Plaintiff was the owner of the invoices and entitled to receipt of payments on

5    the invoices from State Fish and CalPack. A+Staffing retained no further interest in

6    the invoices pursuant to Comml. Code § 9318.

7    62.    State Fish and Cal Pack received notice of Plaintiff's right to payment on

8    services performed by A+Staffing.

9    63.    Despite Plaintiff's demand for payment, State Fish and Cal Pack have

10    refused to make payment to Plaintiff for services received.

11    64.    State Fish and Cal Pack are equally liable on the total Unpaid Invoices

12    amounts as the alter egos of one another as there existed, at all material times, a unity

13    of interest and ownership between State Fish and CalPack such that any individuality

14    and separateness between them has ceased  to exist in that:

15    (a)    State Fish and Cal Pack used the other's assets for their own

16    purposes;

17    (b)    State Fish and Cal Pack held themselves out as liable for each

18    other's debts;

19    (c)    State Fish and CalPack shared the same offices, employees,

20    officers and directors;

21    (d)    State Fish and CalPack disregarded the corporate formalities; and

22    (e)    State Fish used CalPack as a mere shell or conduit for its own

23    affairs.

24    65.    Allowing State Fish and CalPack to adhere to the fiction of a separate

25    legal existence as separate and distinct entities would permit an abuse of the corporate

26    privilege, would promote an injustice, and would sanction a fraud upon the Plaintiff

27    who reasonably and justifiably believed that they were one and the same entity as they

28    held themselves out as such.

LEVINSON ARSHONSKY & KURTZ, LLP

2176-004/192047

66.    As a result, State Fish and Cal Pack are indebted to Plaintiff, in the amount of at least $228,584.97 for services performed by A+Staffing for which State Fish and Cal Pack have yet to pay Plaintiff.

### FIFTH CLAIM FOR RELIEF

**(Common Count—Services Rendered**

**Against Defendants State Fish and Does 1-5)**

67.    Plaintiff refers to and incorporates by reference paragraphs 1-10 and 15-26 of the Complaint as though set forth fully herein.

68.    As set forth supra, A+Staffing provided services to State Fish.

69.    As set forth supra, Plaintiff was the owner of and the assignee of the rights to payment on all invoices representing the services provided for State Fish by A+Staffing, pursuant to Comml. Code §§ 9318 and 9406.  As an assignee, Plaintiff was the owner of the invoices and entitled to receipt of payments on the invoices from State Fish. A+Staffing retained no further interest in the invoices pursuant to Comml. Code § 9318.

70.    State Fish received notice of Plaintiff's right to payment on services performed by A+Staffing.

71.    Despite Plaintiff's demand for payment, State Fish has refused to make payment to Plaintiff for services received.

72.    As a result, State Fish is indebted to Plaintiff, in the amount of at least $165,924.86 for services performed by A+Staffing for which State Fish has yet to pay Plaintiff.

### SIXTH CLAIM FOR RELIEF

**(Common Count—Services Rendered**

**Against Defendants Cal Pack and Does 6-10)**

73.    Plaintiff refers to and incorporates by reference paragraphs 1-10 and 15-26 of the Complaint as though set forth fully herein.

74.    As set forth supra, A+Staffing provided services to Cal Pack.

LEVINSON ARSHONSKY & KURTZ, LLP

2176-004/192047

75.     As set forth supra, Plaintiff was the owner of and the assignee of the rights to payment on all invoices representing the services provided for Cal Pack by A+Staffing, pursuant to Comml. Code §§ 9318 and 9406.  As an assignee, Plaintiff was the owner of the invoices and entitled to receipt of payments on the invoices from Cal Pack. A+Staffing retained no further interest in the invoices pursuant to Comml. Code § 9318.

76.     Cal Pack received notice of Plaintiff's right to payment on services performed by A+Staffing.

77.     Despite Plaintiff's demand for payment, Cal Pack has refused to make payment to Plaintiff for services received.

78.     As a result, Cal Pack is indebted to Plaintiff, in the amount of at least $62,660.11 for services performed by A+Staffing for which Cal Pack has yet to pay Plaintiff.

## SEVENTH CLAIM FOR RELIEF

### (Account Stated Against All Defendants)

79.     Plaintiff refers to and incorporates by reference paragraphs 1 through 26 of the Complaint as though set forth fully herein.

80.     Within four (4) years last past, an account was stated by and between Plaintiff and State Fish and Plaintiff and Cal Pack, and each of them, in the total sum of at least $228,584.97, due and owing as of December 2012.

81.     Statements and invoices were presented to State Fish and Cal Pack, however, neither State Fish nor CalPack timely objected to the outstanding amounts and, accordingly, has acknowledged their outstanding obligations.

82.     Despite the demand therefore, no part of said sum has been paid by State Fish or Cal Pack.

83.     There is now due, owing, and unpaid from State Fish and Cal Pack, and each of them, to Plaintiff, as of December 2012 the sum of at least $228,584.97.

LEVINSON ARSHONSKY & KURTZ, LLP

2176-004/192047

**EIGHTH CLAIM FOR RELIEF**

**(Account Stated Against Defendants State Fish and Does 1-5)**

84.     Plaintiff refers to and incorporates by reference paragraphs 1-10 and 15-26 of the Complaint as though set forth fully herein.

85.     Within four (4) years last past, an account was stated by and between Plaintiff and State Fish, and each of them, in the total sum of at least $165,924.86, due and owing as of December 2012.

86.     Statements and invoices were presented to State Fish, however, State Fish failed to timely object to the outstanding amounts and, accordingly, has acknowledged its outstanding obligations.

87.     Despite the demand therefore, no part of said sum has been paid by State Fish.

88.     There is now due, owing, and unpaid from State Fish, and each of them, to Plaintiff, as of December 2012 the sum of at least $165,924.86.

**NINTH CLAIM FOR RELIEF**

**(Account Stated Against Defendants Cal Pack and Does 6-10)**

89.     Plaintiff refers to and incorporates by reference paragraphs 1-10 and 15-26 of the Complaint as though set forth fully herein.

90.     Within four (4) years last past, an account was stated by and between Plaintiff and Cal Pack, and each of them, in the total sum of at least $62,660.11, due and owing as of December 2012.

91.     Statements and invoices were presented to Cal Pack, however, Cal Pack failed to timely object to the outstanding amounts and, accordingly, has acknowledged its outstanding obligations.

92.     Despite the demand therefore, no part of said sum has been paid by Cal Pack.

93.     There is now due, owing, and unpaid from Cal Pack, and each of them, to Plaintiff, as of December 2012 the sum of at least $62,660.11.

LEVINSON ARSHONSKY & KURTZ, LLP

2176-004/192047

## TENTH CLAIM FOR RELIEF

### (Accounting Against All Defendants)

94.    Plaintiff refers to and incorporates by reference paragraphs 1-93 of the Complaint as though set forth fully herein.

95.    Between in or about January 1, 2012 through December 31, 2012, A+Staffing performed services for the benefit of Defendants, the payment of which was assigned to Plaintiff, pursuant to the terms of the Factoring Agreement and Comml. Code § 9406

96.    Despite Defendants' receipt of the Notice of Assignment, Defendants failed to make payments on invoices owned by and/or assigned to Plaintiff for payment.

97.    Not only did Defendants failed to pay Plaintiff on the outstanding invoices, Defendants actually paid A+Staffing directly, despite having received notice that payment should only be sent to Plaintiff unless Plaintiff, in a signed writing, directs otherwise.

98.    An accounting is necessary to show the amount due to Plaintiff from Defendants and the amounts and identity of invoices paid by Plaintiff directly to A+Staffing, and the amount due could only be shown by an accounting.

**WHEREFORE**, Plaintiff prays for judgment as follows:

(1)    For monetary damages, in an amount subject to proof, of at least $228,584.97, jointly and severally against all Defendants as to the First, Fourth, and Seventh Claims for Relief;

(2)    For monetary damages, in an amount subject to proof, of at least $165,924.86, against Defendants State Fish and Does 1-5 as to the Second, Fifth, and Eighth Claims for Relief;

LEVINSON ARSHONSKY & KURTZ, LLP

16

COMPLAINT

2176-004/192047

(3)   For monetary damages, in an amount subject to proof, of at least $62,660.11, against Defendants Cal Pack and Does 6-10 as to the Third, Sixth, and Ninth Claims for Relief;

(4)   For an Accounting against all Defendants as to the Tenth Claim for Relief;

(5)   For prejudgment and post-judgment interest at the legal rate against all Defendants as to all Claims for Relief;

(6)   For attorney's fees and costs, if applicable, against all Defendants as to all Claims for Relief; and

(7)   For such other and further relief as the Court may deem just and proper.

Dated: May 8, 2013                     LEVINSON ARSHONSKY & KURTZ, LLP

By: _____
   ANNE C. MANALILI
   amanalili@laklawyers.com
   Attorneys for PROSPERITY FUNDING, INC.

2176-004/192047

# EXHIBIT "A"



## FACTORING AND SECURITY AGREEMENT

THIS FACTORING AND SECURITY AGREEMENT (this "Agreement") is made as of July 12, 2011 (the "Effective Date"), by and between A + Staffing, LLC located at 3069 Cardamon Street, Rialto, CA 92376 ("Seller") and Prosperity Funding, Inc. 308-D W. Millbrook Rd. Suite 200, Raleigh, NC 27609 ("Purchaser").

1. **Definitions.** As used herein, the following terms shall have the following respective meanings:

1.1. "Accounts" – all accounts receivable of Seller.

1.2. "Administrative Fee" - The Administrative Fee Percentage multiplied by the Face Amount of a Purchased Account at the time of purchase by Purchaser, for the Initial Factoring Fee Period or portion thereof, calculated from the first day of the Initial Factoring Fee *Period to and including the Per Diem Effective Date and/or the Incremental Fee Date.*

1.3. "Administrative Fee Percentage" – See Addendum "A."

1.4. "Advance Rate" - The amount stated as a percentage, that Purchaser may advance to Seller upon the purchase of an Account, as set forth on Addendum "A".

1.5. "Anniversary Date" – See Section 18.

1.6. "Account Debtor" – Any entity Seller has invoiced for payment for services provided and which said Invoice is submitted by Seller to Purchaser for Purchase.

1.7. "Bad Debt Reserve" – A reserve determined by Purchaser from time to time to cover potential dilution on Seller's Accounts.

1.8. "Business Day" - any day which is not a Saturday, Sunday, or other day on which national banks in North Carolina are authorized or required to be closed.

1.9. "Code" or "UCC"- The Uniform Commercial Code as enacted in North Carolina.

1.10. "Closed" - a Purchased Account is closed upon the first to occur of (i) receipt of full payment by Purchaser or (ii) the unpaid Face Amount has been charged to the Reserve Account by Purchaser pursuant to the terms hereof.

1.11. "Collateral" - All Seller's present and future Accounts, Chattel Paper, Goods (including Inventory and Equipment), Instruments, Investment Property, Documents, and General Intangibles, Letter of Credit Rights, Commercial Tort Claims, Deposit Accounts, and the Proceeds thereof, as such terms are defined in the Code.

1.12. "Concentration Account" – Unless otherwise agreed to, a Purchased Account which, when added to other unpaid Purchased Accounts from the same Account Debtor will cause the balance owing from the Account Debtor to exceed 25% of the total unpaid amount of all Purchased Accounts.

1.13. "Credit and Collection Services" - the following services performed by Purchaser on behalf of Seller as a result of the purchase of accounts hereunder:

1.13.1. All accounts receivable record keeping, including the recording of invoices and payments;

*initial*

1.13.2. Collection of accounts if requested in writing by Seller, and subject to fees and expenses of collection agencies and law firms; and

1.13.3. Setting of such credit limits for sales by Seller as may be required.

1.14. "Cross-Aged" – any Account Debtor whose total ineligible invoices exceed 25% of all outstanding invoices of account debtor.

1.15. "Early Termination Date" – any termination date of this Agreement requested by Seller which is earlier than the next occurring Anniversary Date.

1.16. "Early Termination Amount" – The highest aggregate of all monthly fees of all kinds charged by Purchaser prior to the date on which Purchaser receives a Notice of Early Termination of this Agreement.

1.17. "Eligible Account" - an Account which is acceptable for purchase as determined by Purchaser in the exercise of its sole reasonable credit or business judgment, and which meets such additional terms and requirements as set forth on Addendum "A".

1.18. "Eligibility Period" - The period of time that an Invoice is deemed to be an Eligible Account, as set forth on Addendum "A.

1.19. "Event of Default" – See Section 15.1.

1.20. "Face Amount" - the face amount due on an Account at the time it is purchased pursuant to this Agreement, less such discounts set forth on the face of the Invoice or otherwise.

1.21. "Initial Administrative Fee" – An Administrative Fee charged on the Face Amount of the invoice, as set forth on Addendum "A."

1.22. "Initial Factoring Fee Period" – The period beginning on the Invoice date or purchase date, whichever is earlier, and ending after the number of days set forth on Addendum "A" under the category Initial Factoring Fee Period.

1.23. "Invoice" - the document that evidences an Account. Where the context so requires, reference to an Invoice shall be deemed to refer to the Account to which it relates.

1.24. "Incremental Fee" – A fee, in the amount set forth on Addendum "A", which is charged on all open Accounts on each Incremental Fee Date.

1.25. "Incremental Fee Date"- See Addendum "A".

1.26. "Maximum Amount" - None.

1.27. "Minimum Weekly Volume" – The minimum volume of Accounts upon which the Seller shall pay the Administrative Fee per week, as set forth on Addendum "A". In the event that the Purchaser purchases less than the Minimum Weekly Volume in any week, the Initial Factoring Fee shall be payable on the Minimum Weekly Volume, regardless of the actual lower amount of Accounts purchased.

1.28. "Misdirected Payment Fee" – fifteen percent (15%) of the amount of any payment on account of a Purchased Account which has been received by Seller and not delivered in kind to Purchaser, with all necessary endorsements, on the next Business Day following the date of receipt by Seller.

1.29. "Missing Notation Fee" – fifteen percent (15%) of the amount of any Purchased Account which has invoiced by Seller and not notated as specified in Section 1.30.

*MJ* Initial

1.30. "Notation" - "This account has been assigned and is payable directly to Prosperity Funding, Inc., located at PO Box 601959, Charlotte, NC 28260, to whom notice of any claim or dispute must be advised, either in writing or by telephone (877-367-4249). Pursuant to Section 9.406(a) of the Uniform Commercial Code, you may discharge your obligation only by paying the assignee, Prosperity Funding, Inc."

1.31. "Notice of Early Termination" — Any notice of termination that is effective on any date other than a Termination Date.

1.32. "Obligations" - all present and future obligations owing by Seller to Purchaser whether or not for the payment of money, whether or not evidenced by any note or other instrument, whether direct or indirect, absolute or contingent, due or to become due, joint or several, primary or secondary, liquidated or not liquidated, secured or unsecured, original, renewed, or extended, whether arising before, during, or after the commencement of any bankruptcy case in which Seller is a Debtor, including but not limited to any obligations arising pursuant to letters of credit or acceptance transactions or any other financial accommodations.

1.33. "Party" or "Parties" — Each of Seller and Purchaser.

1.34. "Payment Date" - the date on which a Purchased Account is either paid in full to Purchaser or Repurchased.

1.35. "Payment Delay" -- with respect to each Account, the number of days between the Purchase Date and the Payment Date.

1.36. "Per Diem" -- The daily fee starting on the Per Diem Effective Date, and multiplied by the Face Amount of each Invoice until such Invoice is deemed paid or is Repurchased, in the amount set forth on Addendum "A.".

1.37. "Per Diem Effective Date" - The date following the expiration of the Initial Factoring Fee Period, as set forth Addendum "A".

1.38. "Purchase Date" -- with respect to each Account, the date on which the Account was purchased pursuant to this Agreement.

1.39. "Purchased Account" -- an Account purchased hereunder (or with respect to which Purchaser has advanced any funds) which has not been Repurchased.

1.40. "Repurchased" - an Account has been repurchased when Seller has paid to Purchaser the then unpaid Face Amount.

1.41. "Required Reserve Amount" - the Reserve Percentage multiplied by the unpaid balance of Purchased Accounts.

1.42. "Reserve Account" - a bookkeeping account on the books of the Purchaser representing an unpaid portion of the Face Amounts, maintained by Purchaser to ensure Seller's performance with the provisions hereof, and including, without limitation, the amount of the Required Reserve Amount and the Bad Debt Reserve.

1.43. "Reserve Percentage" -- The difference, stated as a percentage, between the Face Amount and the Advance Rate for each Account.

1.44. "Reserve Shortfall" - the amount by which the Reserve Account is less than the Required Reserve Amount.

1.45. "Schedule of Accounts" - a form supplied by Purchaser from time to time wherein Seller lists such of its Accounts as it requests that Purchaser purchase under the terms of this Agreement. Any Account for which funds are advanced by Purchaser shall be deemed to be listed on a Schedule of Accounts.

_Initial

1.46. "Seller's Bank Account" - any demand deposit account maintained by Seller or represented by an employee of Seller to be maintained by Seller.

2. Sale; Purchase Price; Reserve; Billing

2.1. Assignment and Sale.

2.1.1. Seller shall sell to Purchaser such of Seller's Accounts as are listed from time to time on a Schedule of Accounts. Each Account listed on a Schedule of Accounts shall be deemed assigned to Purchaser. At all times, Seller shall assume the risk of non-payment on Purchased Accounts. This assumption of credit risk shall be limited to the lesser of (a) the product of the Face Amount of a Purchased Account multiplied by the difference between 100% and the Reserve Percentage or (b) actual amount paid by Purchaser for the Purchased Account, if any.

2.1.2. Seller shall provide with each Schedule of Accounts such documentation supporting and evidencing the accounts identified therein as Purchaser shall from time to time request.

2.1.3. Purchaser shall be entitled to purchase from Seller such accounts as Purchaser determines to be Eligible Accounts. In no event shall Purchaser be obligated to purchase any Account and Purchaser may accept or reject any Account in its sole discretion.

2.1.4. Purchaser shall pay the Face Amount of any Purchased Account, less the Reserve Percentage and less any other amounts of any kind due to Purchaser from Seller, to Seller's Bank Account within two (2) business days of Seller's receipt of a statement from Purchaser listing the Accounts which Purchaser has agreed to purchase, whereupon the Accounts shall be deemed Purchased Accounts.

2.2. Billing.   Purchaser may send a weekly statement to all Account Debtors itemizing their account activity during the preceding billing period. All Account Debtors will be instructed to make payments to Purchaser.

2.3. Reserve Account.

2.3.1. Purchaser may pay any portion of the purchase price for any Purchase Account to the Reserve Account in the amount of the Reserve Shortfall.

2.3.2. Seller shall pay to Purchaser on demand the amount of any Reserve Shortfall.

2.3.3. Purchaser may release to Seller once weekly, any amount by which collected funds on an entire Closed schedule in the Reserve Account are greater than the Required Reserve Amount.

2.3.4. Purchaser may charge the Reserve Account with any Obligation, including any amounts due from Seller to Purchaser hereunder at any time in Purchaser's sole discretion.

2.3.5. Purchaser may pay any amounts due Seller hereunder by a credit to the Reserve Account.

2.3.6. Purchaser may adjust the Reserve Percentage at any time without notice if such adjustment is necessitated by a change in the quality of the Purchased Accounts in Purchaser's reasonable credit judgment.

3. Authorization for Purchases.   Subject to the terms and conditions of this Agreement, Purchaser is authorized to purchase Accounts upon telephonic, facsimile, or other instructions received from anyone purporting to be an officer, employee, or representative of Seller.

4. Fees and Expenses.   Seller shall pay to Purchaser:

4.1. Initial Administrative Fee.   Payable upon purchase of each Account.

_Initial

4.2. <u>Minimum Weekly Fee</u>.   The Minimum Weekly Volume multiplied by the Administrative Fee Percentage, as specified in Addendum "A".

4.3. <u>Misdirected Payment Fee</u>.   Any Misdirected Payment Fee immediately upon its accrual.

4.4. <u>Missing Notation Fee</u>.   Any Missing Notation Fee immediately upon its accrual.

4.5. <u>Out-of-Pocket Expenses</u>.   The out-of-pocket expenses directly incurred by Purchaser in the administration of this or any other Agreement that is executed between the Parties including but not limited to wire transfer fees, NSF fees, fees of collection agencies and taxes.

4.6. <u>Early Termination Fee</u>.   The Early Termination Amount multiplied by the number of months (or portion thereof) between the Early Termination Date and the next occurring Anniversary Date.

4.7. <u>Per Diem and Incremental Fee</u>.   The Per Diem and the Incremental Fee payable on the date on which a Purchased Account is Closed.

4.8.  Purchaser shall have the unconditional right to deduct any and all fees and expenses from the Reserve Account.

5. <u>Repurchase Of Accounts</u>.   Purchaser may require that Seller repurchase, by payment of the then unpaid Face Amount thereof together with any unpaid fees relating to the Purchased Account on demand or, at Purchaser's option, by Purchaser's charge to the Reserve Account:

5.1  Any Purchased Account, the payment of which has been disputed by the Account Debtor obligated thereon, Purchaser being under no obligation to determine the bona fides of such dispute;

5.2  All Purchased Accounts upon the occurrence of an Event of Default, or upon the termination date of this Agreement; and

5.3  Any Purchased Account which remains unpaid beyond the Eligibility Period.

5.4  Any Account Purchaser deems at risk, in its sole discretion, regardless of Eligibility Period.

6. <u>Security Interest</u>.

6.1. As security for the Obligations, Seller hereby grants, assigns, conveys, and transfers to Purchaser a continuing first priority security interest in and to the Collateral.

6.2. Notwithstanding the creation of the above security interest, it is intended that Purchaser shall be the unconditional owner of all Purchased Accounts, subject to Purchaser's right to require repurchase, as set forth in Section 5.

7. <u>Clearance Days</u>.   For all purposes under this Agreement, including in determining when an Account is Closed, three (3) Business Days will be added to the date on which any payment is received by Purchaser.  An invoice is not deemed paid until all Clearance Days are satisfied.

8. <u>Power of Attorney</u>.

8.1. Seller irrevocably appoints Purchaser, or any person(s) designated by Purchaser, as its attorney-in-fact, which appointment is coupled with an interest and shall remain in full force and effect until all Obligations of Seller to Purchaser have been fully satisfied and discharged, with full power, at Seller's sole expense, to exercise at any time in Purchaser's discretion all or any of the following powers:

Initial

A + Staffing, LLC  Factoring and Security Agreement
Page 6

8.1.1. Receive, take, endorse, assign, deliver, accept, and deposit, in the name of Purchaser or Seller, any and all cash, checks, commercial paper, drafts, remittances, and other instruments and documents relating to the Collateral or the proceeds thereof;

8.1.2. Take or bring, in the name of Purchaser or Seller, all steps, actions, suits, or proceedings deemed by Purchaser necessary or desirable to effect collection of or other realization upon the Accounts and other Collateral;

8.1.3. After an Event of Default, change the address for delivery of mail to Seller and to receive and open mail addressed to Seller;

8.1.4. Extend the time of payment of, compromise or settle for cash, credit, return of merchandise, and upon any terms or conditions, any and all accounts or other Collateral which includes a monetary obligation and discharge or release any Account Debtor or other obligor (including filing of any public record releasing any lien granted to Seller by such Account Debtor), without affecting any of the Obligations;

8.1.5. File against Seller as debtor in favor of Purchaser as secured party any financing statements (expressly including an "all asset" filing) or amendments with respect to the Collateral;

8.1.6. Pay any sums necessary to discharge any lien or encumbrance which is senior to Purchaser's security interest in the Collateral, which sums shall be included as Obligations hereunder, and in connection with which sums the Per Diem shall accrue and shall be due and payable; and

8.1.7. At any time, irrespective of whether an Event of Default has occurred, without notice to or the assent of Seller, notify any Account Debtor obligated with respect to any account, that the underlying account has been assigned to Purchaser by Seller and that payment thereof is to be made to the order of and directly and solely to Purchaser.

8.1.8. At any time, irrespective of whether an Event of Default has occurred, without notice to or the assent of Seller, contact any Account Debtor by telephone or by written communication (from Purchaser, Purchaser's counsel, or otherwise) for any purpose, including collection of Accounts (whether or not such Accounts are Purchased Accounts).

8.2. Seller hereby releases and exculpates Purchaser, its officers, employees, and designees, from any liability arising from any acts under this Agreement or in furtherance thereof whether of omission or commission, and whether based upon any error of judgment or mistake of law or fact, except for willful misconduct. In no event will Purchaser have any liability to Seller for lost profits or other special or consequential damages. Without limiting the generality of the foregoing, Seller releases Purchaser from any claims which Seller may now or hereafter have arising out of Purchaser's endorsement and deposit of checks issued by Seller's customers stating that they were in full payment of an account, but issued for less than the full amount which may have been owed on the account.

8.3. Seller authorizes Purchaser to accept, endorse, and deposit on behalf of Seller any checks tendered by an Account Debtor "in full payment" of its obligation to Seller. Seller shall not assert against Purchaser any claim arising there from, irrespective of whether such action by Purchaser effects an accord and satisfaction of Seller's claims, under §3-311 of the Code, or otherwise.

8.4. Seller shall fully complete and execute, as taxpayer, prior to or immediately upon the execution of this Agreement, a form 8821 issued by the Department of the Treasury, Internal Revenue Service or such other forms as may be requested by Purchaser, irrevocably authorizing Purchaser to inspect or receive tax information relating to any type of tax, tax form, years or periods or otherwise desired by Purchaser on an ongoing basis.

8.5. ACH Authorization.  In order to satisfy any of the Obligations, Purchaser is hereby authorized by Seller to initiate electronic debit or credit entries through the ACH system to Seller's Bank Account or any other

_Initial_

A + Staffing, LLC  Factoring and Security Agreement
Page 8

10.4. A certificate of insurance, showing Purchaser as additional insured, showing that Seller has liability insurance in an amount satisfactory to Purchaser.

All policies of insurance shall provide for not less than thirty (30) days' prior written cancellation notice to Purchaser.

11. Delivery of Misdirected Payments.  Notwithstanding that Seller has agreed to pay the Misdirected Payment Fee pursuant to Section 4.3 hereof, Seller shall deliver in kind to Purchaser on the next banking day following the date of receipt by Seller of the amount of any payment on account of a Purchased Account.

12. Account Disputes.  Seller shall notify Purchaser promptly of and, if requested by Purchaser, will settle all disputes concerning any Purchased Account, at Seller's sole cost and expense. However, Seller shall not, without Purchaser's prior written consent, compromise or adjust any Purchased Account or grant any additional discounts, allowances, or credits thereon.  Purchaser may, but is not required to, attempt to settle, compromise, or litigate (collectively, "Resolve") the dispute upon such terms as Purchaser in its sole discretion deem advisable, for Seller's account and risk and at Seller's sole expense. Upon the occurrence of an Event of Default, Purchaser may Resolve such issues (in Purchaser's sole discretion) with respect to any Account of Seller.

13. Perfection of Security Interest.  Seller shall execute and deliver to Purchaser such documents and instruments, including, without limitation, UCC-1 financing statements, as Purchaser may request from time to time in order to evidence and perfect its security interest in any collateral securing the Obligations. Seller does hereby authorize Purchaser to file financing statements, including, without limitation, original financing statements, amendments and continuation statements against the Seller and authorizes Purchaser to file financing statements that describe the Collateral as all assets of the Seller, or words of similar effect.

14. Representation and Warranty.  Seller represents and warrants that:

14.1. It is fully authorized to enter into this Agreement and to perform hereunder;

14.2. This Agreement constitutes its legal, valid, and binding obligation; and

14.3. Seller is solvent and in good standing in the State of its organization.

14.4. Each Purchased Account, at the time each is submitted for purchase, is and will remain:

14.4.1. Bona fide existing obligations created by the sale and delivery of goods or the rendition of services in the ordinary course of Seller's business; the amount of each account is due and owing to Seller and represents an accurate statement of a bona fide sale, delivery and acceptance of goods or performance of service by Seller to or for an Account Debtor. The terms for payment of each account sold is not more than thirty (30) days from date of invoice and the payment of such Account is not contingent upon the fulfillment by Seller of any further performance of any nature whatsoever.

14.4.2. Unconditionally owed and will be paid to Purchaser without defenses, disputes, offsets, counterclaims, or rights of return or cancellation.

14.4.3. Indebtedness for sales or services rendered to an entity which is at no time affiliated with Seller or in any way not an "arms length" transaction.

14.5. Seller has not received notice of actual or imminent bankruptcy, insolvency, or material impairment of the financial condition of any applicable Account Debtor regarding Purchased Accounts.

14.6. Seller shall notify Purchaser, in writing, immediately after obtaining knowledge from any source of the filing, by any means, of any lien, claim, or levy, against any property of Seller or Account Debtor.

14.7. Seller shall not interfere with Purchaser's rights under this Agreement.

_____ Initial

14.8.  Seller has not and will not transfer, assign or pledge any of its Accounts and shall not grant a security interest therein to any party other than Purchaser. There are no financing statements now on file in any public office governing any property of Seller of any kind, real or personal, in which Seller is named in or has signed as the debtor, except the financing statement or statements filed or to be filed in respect to this Agreement or those statements now on file that have been disclosed in writing by Seller to Purchaser. Seller will not execute, or allow the filing of, any financing statement in favor of any other person or entity, except Purchaser, during the term of this Agreement.

14.9.  Seller shall notify Purchaser in writing of any proposed change in Seller's name, legal entity, trade name, and office location or ownership structure.

14.10.  Seller shall indemnify Purchaser from any loss arising out of the assertion of any avoidance claim (that being any claim that any payment received by Purchaser from or for the account of an Account Debtor is avoidable under the Bankruptcy Code or any other debtor relief statute), other than such claims which relate to Purchased Accounts which are the subject of an Insolvency Event, and shall pay to Purchaser on demand the amount thereof.  Seller shall notify Purchaser within two business days of it becoming aware of the assertion of an Avoidance Claim.  This subsection shall survive termination of this Agreement.  If after receipt of any payment or proceeds of Collateral applied to the payment of any obligation, Purchaser becomes subjected to an Avoidance Claim or is required to surrender or return such payment or proceeds to any person as a result of an Avoidance Claim, then the obligation intended to be satisfied by such payment or application of such proceeds shall be deemed immediately reinstated and continue in full force and effect as if such payment or proceeds had not been received by Purchaser.  This Section shall remain effective notwithstanding any contrary action which may be taken by Purchaser in reliance upon such payment or proceeds and shall survive the termination of this Agreement.

14.11.  Seller shall accept no returns and shall grant no allowances or credit to any Account Debtor without notice to and the prior written approval of Purchaser.  Seller shall provide to Purchaser for each Account Debtor on accounts that have been purchased, a weekly report in form and substance satisfactory to Purchaser itemizing all such returns and allowances made during the previous week with respect such Eligible Accounts and a check (or wire transfer) payable to Purchaser for the amount thereof.

14.12.  The address set forth below Seller's signature hereon is Seller's mailing address, its chief executive office, principal place of business and the office where all of the books and records concerning the accounts purchased are maintained and that there will be no change made to such location without first giving Purchaser at least thirty (30) days prior written notice.

14.13.  Seller shall maintain its books and records in accordance with generally accepted accounting principles and shall reflect on its books the absolute sale of the accounts to Purchaser.  Seller shall furnish Purchaser, upon request, such information and statements as Purchaser shall request from time to time regarding Seller's business affairs, financial condition and results of its operations.  Without limiting the generality of the forgoing, Seller shall provide to Purchaser, on or prior to the 30th day of each month, unaudited consolidated and consolidating financial statements with respect to the prior month and, within ninety (90) days after the end of Seller's fiscal years, annual consolidated and consolidating financial statements and such certificates relating to the foregoing as Purchaser may request including, without limitation, a monthly certificate from the president and chief financial officer of Seller stating whether any Events of Default have occurred and stating in detail the nature of the Events of Default.  Seller will furnish to Purchaser upon request a current listing of all open and unpaid accounts payable and accounts receivable, and such other items of information that Purchaser may deem necessary or appropriate from time to time.  Unless otherwise expressly provided herein or unless Purchaser otherwise consents, computations and determinations pursuant hereto shall be made in accordance with generally accepted accounting principles, consistently applied.

14.14.  Seller has paid and will pay all taxes and governmental charges imposed with respect to sales of goods and furnish to Purchaser upon request satisfactory proof of payment and compliance with all federal, state and local tax requirements.

14.15.  Seller will promptly notify Purchaser of (i) the filing of any lawsuit against Seller involving any amount, and (ii) any attachment or any other legal process levied against Seller.

_Initial

14.16. Any application made by Seller in connection with this Agreement, and the statements made therein are true and correct at the time that this Agreement is executed. There is no fact which Seller has not disclosed to Purchaser in writing which could materially adversely affect the collateral, business or financial condition of Seller, or any of the Accounts, or which is necessary to disclose in order to keep the foregoing representations and warranties from being misleading.

14.17. In no event shall the funds paid to Seller hereunder be used directly or indirectly for personal, family, household or agricultural purposes.

14.18. Seller does business under no trade or assumed names except as indicated below:

A + Staffing

15. Defaults. Any one or more of the following shall be an Event of Default hereunder:

15.1. Seller shall fail to pay any indebtedness or perform any obligations to Purchaser when due.

15.2. Seller shall breach any term, provision, or covenant, warranty or representation, under this Agreement.

15.3. The appointment of any receiver or trustee or any assets of the Seller.

15.4. Seller shall become insolvent or unable to pay debts as they become due.

15.5 Any involuntary petition in bankruptcy that is filed against the Seller or if any levies of attachments, tax liens, judgments or similar processes or claims.

15.6 A determination by Purchaser that any financial statements submitted by Seller or any guarantor are false or misleading.

15.7 Selling or transferring any security as defined in this agreement.

15.8 Seller shall attempt to deposit the proceeds of any Purchased Account.

15.9 Any guarantor of any of the Obligations shall fail to perform or observe any of such Guarantor's obligations to Purchaser or shall notify Purchaser of its intention to rescind, modify, terminate, or revoke any guaranty of the Obligations, or any such guaranty shall cease to be in full force and effect for any reason whatever; or if Purchaser for any reason, in good faith, deems itself insecure with respect to the prospect of repayment or performance of the Obligations.

15.10 Waiver of Notice. SELLER WAIVES ANY REQUIREMENT THAT PURCHASER INFORM SELLER BY AFFIRMATIVE ACT OR OTHERWISE OF ANY ACCELERATION OF SELLER'S OBLIGATIONS HEREUNDER. FURTHER, PURCHASER'S FAILURE TO CHARGE OR ACCRUE INTEREST OR FEES AT ANY "DEFAULT" OR "PAST DUE" RATE SHALL NOT BE DEEMED A WAIVER BY PURCHASER OF ITS CLAIM THERETO.

15.1.1 Effect of Default.

15.1.2 Upon the occurrence of any Event of Default (and without notice to purchaser), in addition to any rights Purchaser has under this Agreement or applicable law:

15.1.3 Purchaser may immediately cease the purchase of Accounts and declare all Obligations immediately due and payable without notice; and

_Initial_

15.1.4   A 5% late charge shall accrue and is payable on demand on any Obligation not paid when due.

15.1.5   Interest on the Obligations shall accrue at the rate of 18% per annum.

15.1.6   Seller may collect all Accounts, regardless of whether such Accounts are Purchased Accounts and may contact Account Debtors by any means for any purpose.

15.11    In the event Purchaser deems it necessary to seek equitable relief, including, but not limited to, injunctive or receivership remedies, as a result of Seller's default, Seller waives any requirement that Purchaser post or otherwise obtain or procure any bond. Alternatively, in the event Purchaser, in its sole and exclusive discretion, desires to procure and post a bond, Purchaser may procure and file with the court a bond, or in lieu of a bond, a deposit into the court registry, in an amount up to and not greater than $10,000.00 notwithstanding any common or statutory legal requirement to the contrary. Upon Purchaser's posting of such bond, or in lieu of a bond, or deposit into the court registry, it shall be entitled to all benefits as if such bond was posted in full compliance with state law. Seller waives any right it may be entitled to, including an award of attorney's fees or costs, in the event any equitable relief sought by and awarded to Purchaser is thereafter, for whatever reason(s), vacated, dissolved or reversed.

15.12    Seller acknowledges that it has a duty to timely pay all tax obligation(s) and that if, for whatever reason, a tax lien or levy were to issue, that Seller shall cause such lien or levy to be satisfied or discharged within fifteen (15) days. Until such lien or levy is satisfied and discharged, Purchaser shall be entitled to withhold any sum(s) that may otherwise be due Seller and upon request or demand from such taxing authority, without in any way accepting responsibility for the payment of such taxes, may remit any such sums due Seller and over which Purchaser makes no claim, to the taxing authority. Moreover, Seller agrees that until the tax lien or levy is satisfied or discharged, Seller shall be entitled to collect all proceeds of accounts and apply such proceeds to Purchaser's indebtedness. Nothing contained herein shall suspend or abate any performance due Purchaser.

15.13    All post-judgment interest shall bear interest at either the contract rate or the highest rate allowed by law, whichever is higher.

16   <u>Account Stated</u>.  Purchaser shall render to Seller a statement setting forth the transactions arising hereunder. Each statement shall be in a format and in such detail as Purchaser, in its sole discretion, deems appropriate. Purchaser's books and records shall be admissible in evidence without objection as prima facie evidence of the status of the Accounts.  Each statement, report, or accounting rendered, issued or available to Seller by Purchaser shall be deemed conclusively accurate and binding on Seller unless within fifteen (15) days after the date of issuance, Seller notifies Purchaser by registered or certified mail, setting forth with specificity the reasons why Seller believes such statement, report, or accounting is inaccurate, as well as what Seller believes to be correct amount(s) therefore. Seller's failure to receive any monthly statement shall not relieve it of the responsibility to request such statement and failure to do so shall nonetheless bind Seller to whatever Purchaser's records would have reported. In the event that Seller fails to notify Purchaser of any objection within such fifteen (15) day period, Seller shall have waived the right to object to such statement.

17   <u>Waiver</u>.  No failure to exercise and no delay in exercising any right, power, or remedy hereunder shall impair any right, power, or remedy which Purchaser may have, nor shall any such delay be construed to be a waiver of any of such rights, powers, or remedies, or any acquiescence in any breach or default hereunder; nor shall any waiver by Purchaser of any breach or default by Seller hereunder be deemed a waiver of any default or breach subsequently occurring. All rights and remedies granted to Purchaser hereunder shall remain in full force and effect notwithstanding any single or partial exercise of, or any discontinuance of action begun to enforce, any such right or remedy. The rights and remedies specified herein are cumulative and not exclusive of each other or of any rights or remedies that Purchaser would otherwise have. Any waiver, permit, consent, or approval by Purchaser of any breach or default hereunder must be in writing and shall be effective only to the extent set forth in such writing and only as to that specific instance.

_Initial

A + Staffing, LLC  Factoring and Security Agreement
Page 12

18   Termination; Effective Date.  This Agreement will be effective as of the Effective Date, will continue in full force and effect for the period set forth in Addendum "A", and shall be further extended automatically for successive terms unless Seller gives Purchaser written notice of its intention to terminate at least sixty (60) days' and no more than ninety (90) days prior to each such anniversary date (each an "Anniversary Date"), whereupon this Agreement shall terminate on the next following anniversary.  Upon termination Seller shall pay all of the Obligations to Purchaser and Seller shall repurchase all Accounts then owned by Seller at the Face Amount of such Accounts.  In the event Seller fails to pay the Obligations and/or to effect such repurchase, this Agreement shall be extended automatically until the next Anniversary Date.

19   Right of First Refusal.  In consideration of Purchaser entering into this Agreement and making advances to Seller, Seller hereby agrees that it will, within five (5) days of receipt, provide a copy of any letter of intent or commitment letter from any other purchaser or lender to Seller offering to refinance its obligations.  Purchaser shall have the right to match the offer of said offer(s) and if Purchaser advises Seller it intends to meet the financial terms set forth in such offers, Seller will be obligated to enter into an amendment with Purchaser to extend its present term of this Agreement for at least the term in any other such offers.

20   Right to Grant Participations.  This Agreement shall bind and inure to the benefit of the respective successors and assigns of each of the parties; provided, however, that the Seller may not assign this agreement or any rights hereunder without Purchaser's written consent, which shall be at the Purchaser's sole discretion and any prohibited assignment shall be absolutely void.  No consent to an assignment by Purchaser shall release Seller from its obligations to Purchaser.  Purchaser may assign this agreement and its rights and duties hereunder.  Purchaser reserves the right to assign, sell, transfer, negotiate or grant participations in all or any part, or any interest in, Purchaser's rights and benefits hereunder.

21   Seller agrees that Purchaser shall not be responsible for any communication or miscommunication by any individual claiming to or which Purchaser in its discretion believes to have proper authority to give any communication whether written, verbal, or electronic communication.  In addition to the other indemnifications set forth herein, the Seller hereby indemnifies and holds Purchaser harmless from and against any and all claims, demands, losses, liabilities, actions, lawsuits and other proceedings, judgments and awards, and from costs and expenses (including without limitation reasonable attorney's fees) arising directly or indirectly, in whole or in part, out of the negligence, willful misconduct, misuse or unlawful or unauthorized use of any facsimile message or, facsimile signature or signatures of any person or persons, including the Seller or its partners, officers, directors, agents or employees, whether within or beyond the scope of such individual's duties or authority there under.  Further, the Seller agrees to assume full responsibility for any and all advances and actions taken by Purchaser in reliance upon any facsimile transmission, electronic transmission, other written, verbal or electronic communication, facsimile signature or signatures of any person or persons, including the Seller or its partners, officers, directors, agents or employees, signing on behalf of the Seller.

22   Amendment.  Neither this Agreement nor any provisions hereof may be changed, waived, discharged, or terminated, nor may any consent to the departure from the terms hereof be given, orally (even if supported by new consideration), but only by an instrument in writing signed by all parties to this Agreement.  Any waiver or consent so given shall be effective only in the specific instance and for the specific purpose for which given.

23   Survival.  All representations, warranties, and agreements herein contained shall be effective so long as any portion of this Agreement remains executory.

24   No Lien Termination Without Release.  In recognition of the Purchaser's right to have its attorneys' fees and other expenses incurred in connection with this Agreement secured by the Collateral, notwithstanding payment in full of all Obligations by Seller, Purchaser shall not be required to record any terminations or satisfactions of any of Purchaser's liens on the Collateral unless and until Seller has executed and delivered to Purchaser a general release in a form reasonably satisfactory to Purchaser.  Seller understands that this provision constitutes a waiver of its rights under §9-404 of the UCC.

*Initial*

A + Staffing, LLC  Factoring and Security Agreement
Page 13

25    Conflict.  Unless otherwise expressly stated in any other agreement between Purchaser and Seller, if a conflict exists between the provisions of this Agreement and the provisions of such other agreement, the provisions of this Agreement shall control.

26    Enforcement.  This Agreement and all agreements relating to the subject matter hereof are the product of negotiation and preparation by and among each party and its respective attorneys, and shall be construed accordingly.

27    Severability.  In the event any one or more of the provisions contained in this Agreement is held to be invalid, illegal or unenforceable in any respect, then such provision shall be ineffective only to the extent of such prohibition or invalidity, and the validity, legality, and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

28    Relationship of Parties.  The relationship of the parties hereto shall be that of Seller and Purchaser of accounts, and neither party is or shall be deemed a fiduciary of or to the other.  Seller acknowledges that there is not now, and that it will not seek or attempt to establish, any fiduciary relationship between Purchaser and Seller, and Seller waives any right to assert, now or in the future, the existence or creation of any fiduciary relationship between Purchaser and Seller in any action or proceeding (whether by way of claim, counterclaim, cross claim or otherwise) between them.

29    Attorneys' Fees.  Seller agrees to reimburse Purchaser on demand for:

    29.11    The actual amount of all costs and expenses, including attorneys' fees, which Purchaser has incurred or may incur in:

        29.11.1    Negotiating, preparing, or administering this Agreement and any documents prepared in connection herewith;

        29.11.2    Any way arising out of this Agreement; and

        29.11.3    Protecting, preserving, or enforcing any lien, security interest, or other right granted by Seller to Purchaser or arising under applicable law, whether or not suit is brought;

    29.12    The actual costs, including photocopying (which, if performed by Purchaser's employees, shall be at the rate of $.10/page), travel, and attorneys' fees and expenses incurred in complying with any subpoena or other legal process attendant to any litigation in which Seller is a party;

    29.13    Either (the choice of which shall be in the sole discretion of Purchaser):

        (a)  The actual amount of all costs and expenses, including attorneys' fees, which Purchaser may incur in enforcing this Agreement and any documents prepared in connection herewith, or in connection with any federal or state insolvency proceeding commenced by or against Seller, including those (i) arising out the automatic stay, (ii) seeking dismissal or conversion of the bankruptcy proceeding or (ii) opposing confirmation of Seller's plan hereunder, or
        (b)  Fifteen percent (15%) of the amount of the then existing Obligations.
        All such costs and expenses of Purchaser which has been incurred on or prior to the execution hereof shall be paid contemporaneously with the execution hereof.  Any such costs and expenses incurred subsequent to the execution hereof shall become part of the Obligations when incurred and may be added to the outstanding principal amount due hereunder.

    29.14.  Notwithstanding the existence of any common law, statute or rule in any jurisdiction which may provide Seller with a right to attorney's fees or costs, Seller hereby waives any and all rights to seek attorney's fees or costs hereunder and Seller agrees that Purchaser exclusively shall be entitled to recovery of its attorney's fees or

_Initial

A + Staffing, LLC. Factoring and Security Agreement
Page 14

costs in respect to any litigation based on, arising out of, or related to this Agreement, whether under, or in connection with, this and/or any agreement executed in conjunction herewith, or any course of conduct, course of dealing, statements (whether verbal or written) or actions of either party.

30   Entire Agreement.  This Agreement supersedes all prior or contemporaneous agreements and understandings between said parties, verbal or written, express or implied, relating to the subject matter hereof. No promises of any kind have been made by Purchaser or any third party to induce Seller to execute this Agreement. No course of dealing, course of performance, or trade usage, and no parole evidence of any nature, shall be used to supplement or modify any terms of this Agreement.

31   Choice of Law.  This Agreement and all transactions contemplated hereunder and/or evidenced hereby shall be governed by, construed under, and enforced in accordance with the internal laws of the State of North Carolina.

32   Arbitration.  The parties agree that, at the option of Purchaser, any controversy, claim, or dispute involving the interpretation or breach of this Agreement shall first be subject to binding arbitration in accordance with the rules provided in the Uniform Arbitration Act as enacted in North Carolina General Statutes Article 45C. The parties shall use good faith efforts to agree upon the arbitrator; however, if they cannot agree then Purchaser shall select the arbitrator.   The venue for any such arbitration shall be Raleigh, North Carolina or another location in North Carolina selected by Purchaser. Judgment upon the award rendered by the arbitrator or arbitrators may be entered in any Acceptable Forum and in any court having jurisdiction over the Parties. In the event Seller refuses or fails to participate in the arbitration process, Purchaser shall have the right to compel arbitration in accordance with N.C.G.S. 1-569.7 and Seller shall bear all expenses in connection therewith. Nothing in this arbitration provision shall be deemed to (i) limit the applicability of any otherwise applicable statutes of limitation or repose and any waivers contained in this instrument, agreement or document; or (ii) be a waiver by Purchaser of the protection afforded to it by 12 U.S.C. sec. 91 or any substantially equivalent state law; or (iii) limit the right of Purchaser hereto (a) to exercise self help remedies such as (but not limited to) setoff, or (b) to foreclose against any real or personal property collateral, or (c) to obtain from a court provisional or ancillary remedies such as (but not limited to) injunctive relief, writ of possession or the appointment of a receiver. Purchaser may exercise such self-help rights, foreclose upon such property, or obtain such provisional or ancillary remedies before, during or after the pendency of any arbitration proceeding brought pursuant to this instrument, agreement or document. Neither this exercise of self help remedies nor the institution or maintenance of an action for foreclosure or provisional or ancillary remedies shall constitute a waiver of the right of any party, including the claimant in any such action, to arbitrate the merits of the controversy or claim occasioning resort to such remedies.

33   Venue; Jurisdiction; Jury Trial Waiver.  The Parties agree that any suit, action, or proceeding arising out of the subject matter hereof, or the interpretation, performance, or breach of this Agreement, shall, if Purchaser so elects, be instituted exclusively in the United States District Court for the Eastern District of North Carolina or any court of the State of North Carolina located in Raleigh, North Carolina or Greensboro, North Carolina (each an "Acceptable Forum"), each Party agrees that the Acceptable Forums are convenient to it, and each Party irrevocably submits to the jurisdiction of the Acceptable Forums, irrevocably agrees to be bound by any judgment rendered thereby in connection with this Agreement, and waives any and all objections to jurisdiction or venue that it may have under the laws of the State of North Carolina or otherwise in those courts in any such suit, action or proceeding. Seller agrees that it shall not institute any proceeding in any court other than an Acceptable Forum.  In the event Seller institutes a proceeding in any court other than an Acceptable Forum, this Section 33 is intended to be an absolute bar to such a proceeding and therefore, such proceeding shall be dismissed upon Purchaser's motion. Should such proceeding be initiated in any other forum, Seller waives any right to oppose any motion or application made by Purchaser as a consequence of such proceeding having been commenced in a forum other than an Acceptable Forum.

AS AN INDUCEMENT FOR PURCHASER TO ENTER INTO THIS AGREEMENT AND TO PURCHASE ACCOUNTS AND MAKE ANY ADVANCES TO SELLER, SELLER AND PURCHASER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT AND, OTHER

_Initial_

DOCUMENTS OR TERMS AND CONDITIONS STIPULATED HEREIN OR EXECUTED IN CONNECTION THEREWITH.

34   Notice.

  34.11   All notices required to be given to any Party other than Purchaser shall be deemed given upon the first to occur of (i) deposit thereof in a receptacle under the control of the United States Postal Service, (ii) transmittal by electronic means to a receiver under the control of such party; (iii) delivery of the same to an agent of an overnight courier service; or (iv) actual receipt by such party or an employee or agent of such party.

  34.12   All notices required to be given to Purchaser hereunder shall be deemed given upon actual receipt by a responsible officer of Purchaser.

  34.13   For the purposes hereof, notices hereunder shall be sent to the following addresses, or to such other addresses as each such party may in writing hereafter indicate.

35   Financial Accommodation and Non-Assumable.   This Agreement shall be deemed to be one of financial accommodation and not assumable by any debtor, trustee or debtor-in-possession in any bankruptcy proceeding without Purchaser's express written consent, which may be withheld in its sole discretion, and may be suspended in the event a petition in bankruptcy is filed by or against Seller.

36   Rights Against Successor Entity.   In the event Seller's principals, officers or directors form a new entity similar to that of Seller during the term of this Agreement or while Seller remains liable to Purchaser for any obligations under this Agreement, whether corporate, partnership, limited liability company or otherwise, the principals hereby acknowledge that such entity shall be deemed to have expressly assumed the Obligations due Purchaser by Seller under this Agreement. Upon the formation of any such entity, Purchaser shall be deemed to have been granted an irrevocable power of attorney with authority to execute and file, on behalf of the newly formed successor business, a new UCC-1 or UCC-3 financing statement and have it filed with the appropriate secretary of state or UCC filing office. Purchaser shall be held harmless and be relieved of any liability as a result of Purchaser's execution and filing or recording of any such financing statement or the resulting perfection of a lien in any of the successor entity's assets. In addition, Purchaser shall have the right to notify the successor entity's account debtors of Purchaser's lien rights, its right to collect all Accounts, and to notify any new lender who has sought to procure a competing lien of Purchaser's right in such successor entity's assets.

37   Counterparts.   This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if all signatures were upon the same instrument. Delivery of an executed counterpart of the signature page to this Agreement by facsimile transmission or electronic delivery shall be effective as delivery of a manually executed counterpart of this Agreement, and any party delivering such an executed counterpart of the signature page to this Agreement by facsimile or electronic delivery to any other party shall thereafter also promptly deliver a manually executed counterpart of this Agreement to such other party, provided that the failure to deliver such manually executed counterpart shall not affect the validity, enforceability, or binding effect of this Agreement. Seller agrees to indemnify Purchaser against and defend and save Purchaser harmless from (i) any and all manner of suits, claims or demands resulting from or arising out of Seller's acts or omissions under or related to this Agreement or the transactions or relationships contemplated hereby, (ii) any breach or default by Seller under this Agreement, including the failure to pay attorney's fees as required by Section 29 (iii) any ill will or loss of business arising from Purchaser's collecting or attempting to collect any Account from any Account Debtor and (iv) any loss suffered by the failure by Seller or Seller's documentation to comply with all applicable laws, rules and regulations, including without limitation, credit disclosure, access to credit, truth and lending laws and the like, and (v) any and all costs, damages, liabilities, losses, lost revenue, deficiencies, assessments and expenses, including reasonable attorney's fees, that Purchaser may suffer or incur or to which Purchaser may be subject by reason of any of the foregoing or for any other reason, other than the fraudulent conduct of Purchaser.

/m?/ Initial

38    Purchaser's Lender.  "Pledge and Assignment of Seller's Accounts Receivable by Purchaser."  Seller acknowledges and understands that Purchaser may enter into a financing agreement with a senior secured lender ("Lender").  In connection with such financing, Purchaser may sell and/or assign all or a portion of Seller's Accounts Receivable to Lender.  Seller hereby consents to Purchaser entering into such financing agreement with Lender.  Seller further agrees as follows:

38.1    Seller shall have no rights under the financing agreement with Lender, and will have no rights against Lender for any actions that it takes or fails to take under the financing agreement.  Seller will not look to or seek to hold Lender, or its respective officers, employees, directors or agents responsible for any of Purchaser's obligations under this Agreement, and Purchaser's relationship with Lender is completely separate and apart from Seller's relationship with Purchaser except as to any lien rights and the granting and enforcing of any security interests that Lender may have and assert by reason of its purchase and/or assignment of Seller's Accounts to Lender pursuant to the financing agreement entered into between Purchaser and Lender.

38.2    In the event Seller is advised that Lender has purchased or has received an assignment of all or a portion of Seller's Accounts pursuant to the financing agreement between Lender and Purchaser, Seller agrees that all of its representations and warranties set forth in this Agreement, shall extend and inure to Lender and its successors and assigns.

38.3    If so requested by Purchaser or Lender, Seller shall execute any documentation or notice required by Lender to evidence the fact that any or all of Seller's Accounts have been sold and assigned to Lender and are payable to Lender only.  Seller shall take such additional actions in furtherance of the rights of Lender and Purchaser as Purchaser or Lender may reasonably require; provided, however, that Lender may not alter the terms of this Agreement, except as provided herein.

38.4    Seller consents to Purchaser sharing with Lender copies of all financial statements and information regarding Seller delivered or made available to Purchaser under this Agreement.

38.5    Upon notification in writing from Lender that Lender no longer has a financing arrangement with Purchaser, the terms and provisions of this section of the Factoring and Security Agreement between Seller and Purchaser shall have no further force or effect.

[SIGNATURES BEGIN ON NEXT PAGE]

Initial

A + Staffing, LLC Factoring and Security Agreement
Page 17

IN WITNESS WHEREOF, the Parties have executed this Agreement on the day and year first above written.

SELLER: A + Staffing, LLC

By: _~Myrna Ramirez~_____

Name: Mrs. Myrna Ramirez

Title: _Owner_____

Address for Notices:

_4534 W. PARK ST_
_LAVEEN, AZ_
_____85339

FAX NO.: _909) 258-2371_

FEIN: _42-2290673_

STATE OF _AZ_

COUNTY OF _Maricopa_

The foregoing instrument was acknowledged before me this _25th_ day of _July_, 20_11_, by _Myrna Ramirez_ on behalf of _A+Staffing, LLC_. He\she is personally known to me or has produced _AZ DL_ as identification.

_Claudia Meraz_
Notary Public
Print Name: _Claudia Meraz_

My Commission expires: _Nov. 25, 2014_

OFFICIAL SEAL
CLAUDIA MERAZ
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires Nov. 25, 2014

_MR~_ Initial

A + Staffing, LLC Factoring and Security Agreement
Page 18

IN WITNESS WHEREOF, the Parties have executed this Agreement on the day and year first above written.

SELLER: A + Staffing, LLC

By: _Anna Abrego_____

Name: Ms. Anna Abrego

Title: _Owner_____

Address for Notices:

_3069 Cardamon St_
_Rialto CA. 92376_

FAX NO.: _909 258-2371_

FEIN: _____

STATE OF _CA_

COUNTY OF _San Bernardino_

The foregoing instrument was acknowledged before me this _23_ day of _July_, 20_11_, by _Rhonny Hernandez_ on behalf of _Anna Abrego_. He/she is personally known to me or has produced _CA Driver License_ as identification.

_____
Notary Public
Print Name: _Rhonny Hernandez_

My Commission expires: _April 18, 2014_

RHONNY HERNANDEZ
COMM. #1886326
Notary Public - California
Bernardino County
My Comm. Expires Apr. 18, 2014

_AA_ Initial

A + Staffing, LLC  Factoring and Security Agreement
Page 19

IN WITNESS WHEREOF, the Parties have executed this Agreement on the day and year first above written.

SELLER: A + Staffing, LLC

By: _____

Name: Mr. Robert Ramirez

Title: _____

Address for Notices:

4554 W. PARK ST
LAVEEN, AZ
85339

FAX NO.: 909/258-2371

FEIN: 42-2296673

STATE OF AZ

COUNTY OF Maricopa

The foregoing instrument was acknowledged before me this 25th day of July, 2011, by
Robert Ramirez on behalf of A+ Staffing LLC. He/she is personally known to me or has produced
AZ _____ as identification.

_____
Notary Public
Print Name: Claudia Meraz

My Commission expires: NOV. 25, 2014

```
OFFICIAL SEAL
CLAUDIA MERAZ
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires Nov. 25, 2014
```

PURCHASER: Prosperity Funding, Inc.

By: _____
Name: Michelle Jetten
Title: Sr. Vice President
Address for Notices:

308-D W Millbrook Rd Suite 200
Raleigh, NC 27609

FAX NO.:

Michelle Jetten
(815)

550-1922

_____ Initial

## CONTINUING UNCONDITIONAL GUARANTY OF FACTORING AND SECURITY AGREEMENT

THIS CONTINUING UNCONDITIONAL GUARANTY OF FACTORING AND SECURITY AGREEMENT ("Guaranty"), is made and executed this the 12th day of July, 2011, by the Guarantors (hereinafter referred to as the "Guarantors") in favor of PROSPERITY FUNDING, INC., a North Carolina corporation (hereinafter referred to as the "Purchaser"):

WHEREAS, A + Staffing, LLC ("Seller") has executed the foregoing Factoring and Security Agreement of even date herewith (the "Agreement"); and

WHEREAS, to induce the Purchaser to enter into the Agreement, the Guarantors have agreed to execute this Guaranty; and

WHEREAS, all of the Obligations, as defined in the Agreement, are referred to herein as the "Obligations."

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which is hereby expressly acknowledged, the Guarantors do hereby agree with the Purchaser as follows:

1.  **Guaranty.** The Guarantors do hereby jointly, severally and unconditionally guarantee to the Purchaser the due and punctual payment, performance and discharge, when and as the same shall become due, of the Obligations.

2.  **Obligations of Guarantors Absolute.** The Guarantors agrees that without notice to the Guarantors and without affecting, impairing, modifying or releasing the obligations of the Guarantors hereunder, the Purchaser may compromise, settle, extend the period of duration or the time for payment or discharge or performance of, or may refuse to enforce or may release all or any parties to any and all of the Obligations, or may grant other indulgences to Seller, or may amend or modify or make changes in any of the Obligations, or may release, surrender, exchange, modify or impair any property securing the Obligations or on which the Purchaser at any time may have a lien, or may refuse to enforce its rights, or may make any compromise or settlement or agreement therefore in respect of any property that secures the Obligations or with any party to the Obligations or any other person, firm or corporation whatever, or may release or substitute any other guarantors of the Obligations, whether parties to this instrument or not, or may exchange, enforce, waive or release any security for any guaranty of the Obligations.

The obligations of the Guarantors are independent of the obligations of the Seller under the Agreement, and separate action or actions may be brought and prosecuted by Purchaser against the Guarantors whether or not an action is brought against the Seller or whether the Seller is joined in any such action or actions.

It is the intention of the Guarantors that this Guaranty shall constitute a continuing guaranty of the Obligations of the Seller under the Agreement and any addendum or modifications thereto. The Guarantors further agree that their liability is primary, direct, irrevocable and unconditional and enforceable without prior resort to any right, remedy or security. This Guaranty is continuing in nature and shall continue in full force and effect until payment in full of all amounts guaranteed hereby, performance in full of all obligations whatsoever of the Guarantors hereunder and absolute discharge or release of the Guarantors by Purchaser. So long as this Guaranty is in effect, Guarantors will not, without Purchaser prior written consent, transfer, sell or assign any of their assets or otherwise defease themselves of any of their assets.

3.  **Waivers.** The Guarantors do hereby waive notice of (a) acceptance of this Guaranty, (b) any demand, proof or notice of the failure of the Company to pay any or perform the Obligations or to keep any other covenant, condition or agreement required under the Agreement (c) the creation, existence or acquisition of the Obligations, (d) notice of adverse change in the Seller's financial condition or of any other fact which might increase the

_M3_ Initial

Guarantors' risk, (e) presentment, payment, demand, protest and notice thereof as to any instrument, (f) default and all notices and demands to which Guarantors might otherwise be entitled, and (g) all rights of subrogation. The Guarantors further waive all rights of contribution, indemnity or any right set forth in N.C.G.S. Sections 26-7 thorough 26-9.

4.   No Right of Set-Off.  No act of commission or omission of any kind or at any time upon the part of Purchaser in respect of any matter whatsoever shall in any way affect or impair the rights of Purchaser to enforce any right, power or benefit under this Guaranty, and no set-off, recoupment, claim, reduction or diminution of any Obligation or any defense of any kind or nature which Guarantors have or may have against the Purchaser shall be available to or asserted by Guarantors in any suit or action brought by the Purchaser to enforce any right, power or benefit under this Guaranty.

5.   Litigation; Waiver of Jury Trial.  The Guarantors waive the right to a jury trial in any action or proceeding arising out of or relating to this Guaranty and agree that all such actions or proceedings at the option of the Purchaser shall be litigated in an Acceptable Forum (as defined in the Agreement) and expressly consent to the jurisdiction of any state or federal court which is an Acceptable Forum. The Guarantors agree that, at the option of Purchaser, any controversy, claim, or dispute involving the interpretation or breach of this Agreement shall first be subject to binding arbitration in accordance with the rules provided in the Uniform Arbitration Act as enacted in North Carolina General Statutes Article 45C. The parties shall use good faith efforts to agree upon the arbitrator; however, if they cannot agree then Purchaser shall select the arbitrator.  The venue for any such arbitration shall be Raleigh, North Carolina or another location in North Carolina selected by Purchaser. Judgment upon the award rendered by the arbitrator or arbitrators may be entered in any Acceptable Forum and in any court having jurisdiction over the Guarantors. In the event Guarantors refuse or fail to participate in the arbitration process, Purchaser shall have the right to compel arbitration in accordance with N.C.G.S. 1-569.7 and Guarantors shall bear all expenses in connection therewith. Nothing in this arbitration provision shall be deemed to (i) limit the applicability of any otherwise applicable statutes of limitation or repose and any waivers contained in this instrument, agreement or document; or (ii) be a waiver by Purchaser of the protection afforded to it by 12 U.S.C. sec. 91 or any substantially equivalent state law; or (iii) limit the right of Purchaser hereto (a) to exercise self help remedies such as (but not limited to) setoff, or (b) to foreclose against any real or personal property collateral, or (c) to obtain from a court provisional or ancillary remedies such as (but not limited to) injunctive relief, writ of possession or the appointment of a receiver. Purchaser may exercise such self-help rights, foreclose upon such property, or obtain such provisional or ancillary remedies before, during or after the pendency of any arbitration proceeding brought pursuant to this instrument, agreement or document. Neither this exercise of self help remedies nor the institution or maintenance of an action for foreclosure or provisional or ancillary remedies shall constitute a waiver of the right of any party, including the claimant in any such action, to arbitrate the merits of the controversy or claim occasioning resort to such remedies.

AS AN INDUCEMENT FOR PURCHASER TO ENTER INTO THE AGREEMENT AND TO PURCHASE ACCOUNTS AND MAKE ANY ADVANCES TO SELLER, GUARANTORS AND PURCHASER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS GUARANTY AND, OTHER DOCUMENTS OR TERMS AND CONDITIONS STIPULATED HEREIN OR EXECUTED IN CONNECTION THEREWITH.

6.   Default:  Any one or more of the following shall be a default hereunder: (a) any default in payment or performance of any instrument, or of the Obligations hereby guaranteed; or (b) any warranty, representation, statement, or report made or delivered to Purchaser by or on behalf of the Seller, or the Guarantors, is incorrect, false, untrue or misleading when given in any material respect whatever; or (c) there shall occur the dissolution of the Seller or the transfer, hypothecation or liquidation of all or substantially all of the Seller's assets; or (d) the Guarantors shall sell, transfer, convey or in any manner alienate its interest in the Seller. In the event of any of the foregoing, the Obligations hereby guaranteed shall become, for the purpose of this Guaranty, due and payable by the Guarantors forthwith without demand or notice.

7.   Authority Of Officers:  It is not necessary for Purchaser to inquire into the powers of the Seller or the officers, directors, agents, acting or purporting to act in its behalf and any Obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed hereunder.

Initial

8.  Partnership or Association:  When the Seller is a partnership or other association, this Guaranty is to extend to the person or persons for the time being and from time to time carrying on the business now conducted by the Seller, notwithstanding any change or changes in the name, structure and/or membership of the Seller.

9.  Financial Condition Of Seller:  The Guarantors represent to Purchaser that they are now and will be completely familiar with the business, operation and overall economic condition of the Seller and they hereby waive and relinquish any duty on the part of Purchaser to disclose any matter, fact, or thing relating to the business, operation or financial condition of the Seller now known or hereafter known by Purchaser.

10.  Guarantor's Direct Benefit:  The Guarantors hereby represent and warrant that it is in the Guarantors' direct interest to assist the Seller because of the Guarantors' positions in and economic relations with the Seller.

The Guarantors hereby represents and warrants that after giving effect to the execution and delivery of this Guaranty and the Obligations of the Seller under the Agreement, and the prospect of payment under this Guaranty: (i) the existing fair saleable value of the Guarantors' assets exceed the value of the Guarantors' stated liabilities, including all contingent liabilities; (ii) the Guarantors do not have an unreasonably small amount of capital for the operation of the business in which they are engaged, or contemplates engaging in the future; (iii) the Guarantors have sufficient income to meet their cash requirements and to pay their stated liabilities, including contingent liabilities as they become due; (iv) the Guarantors are not engaged in a business or transaction for which the assets of the Guarantors are unreasonably small in relation to the business or transaction; (v) the Guarantors do not intend to incur or believe or reasonably should believe that they will incur debts beyond their ability to pay as they become due; (vi) the Guarantors further acknowledge, agree, represent and warrant that they have received reasonably equivalent value in exchange for the giving of this Guaranty; and (vii) the Guarantors do not intend by the giving or the performance of the Guaranty to hinder, delay or defraud any of their creditors.

In the event that the foregoing representations and warranties prove to be untrue, then to the extent this Guaranty is held to be unenforceable under any fraudulent transfer, bankruptcy or insolvency laws, and only to such extent, without waiving any of the rights of Purchaser against the Guarantors based on such misrepresentation, the sums payable by the Guarantors under this Guaranty shall be adjusted to an amount which shall cause such warranties to have been true when made and this Guaranty shall be and remain enforceable to such extent, notwithstanding any partial unenforceability under any fraudulent transfer, bankruptcy or insolvency laws.

This Guaranty shall be valid and binding upon the Guarantors, regardless of any invalidity, irregularity, defect or unenforceability of or in any of the Obligations. The Guarantors further agrees that this Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time payment of all or any part of the Obligations is rescinded or otherwise must be restored by Purchaser to the Seller or to the creditors of the Seller or any representative of the Seller or representative of its creditors upon the insolvency, bankruptcy or reorganization of the Seller, or to any Guarantor or the creditors of any Guarantor or any representative of any Guarantor or representative of the creditors of any Guarantor upon the insolvency, bankruptcy or reorganization of any Guarantor, or otherwise, all as though such payments had not been made.

11.  Financial Information:  Guarantors further agrees to furnish to Purchaser, (a) within thirteen (13) months of the date of the last statement submitted to Purchaser, their annual financial statement in form satisfactory to Purchaser, (b) within thirty (30) days after the filing with the Internal Revenue Service, a complete copy of their annual tax return, including any and all schedules, and any Application for Automatic Extension of Time to File Individual Income Tax Return, and (c) promptly after the Purchaser request, such other information as Purchaser may, from time to time, reasonable request.

12.  Attorney's Fees:  Whether or not suit be instituted, the Guarantors agree to pay reasonable attorney's fees and all other costs and expenses incurred by Purchaser in drafting, revising, interpreting or enforcing this Guaranty and in any action or proceedings arising out of or relating to this Guaranty. Such attorney's fees shall be based upon the reasonable rates of Purchaser attorneys, and not based upon a percentage of the Obligations.

13.  Successors and Assigns:  This Guaranty shall bind the successors and assigns of the Guarantors

_____ Initial

and shall inure to Purchaser successors and assigns.

14.    Severability:  In case any right of Purchaser herein shall be held to be invalid, illegal, or unenforceable, such invalidity, illegality and/or unenforceability, shall not affect any other right granted hereby.

15.    Compliance:  The Guarantors agree that if requested by Purchaser or Purchaser counsel, the Guarantors will fully cooperate and execute and/or re-execute any document or documents due to clerical errors, scrivener's errors or relating to additional matters due to receipt and review of miscellaneous required items post closing, using reasonable discretion of Purchaser and Purchaser's Counsel, and hereby authorize Purchaser and Purchaser's Counsel to date this Guaranty and any other documents, and to complete, on behalf of the Guarantors, any blanks in the Guaranty or in any other documents.

16.    Collection Expenses.  The Guarantors agree to pay all expenses incurred by the Purchaser in connection with the collection of the Obligations from the Guarantors and the enforcement of the Purchaser's rights under this Guaranty, including, without limitation, court costs, collection charges and reasonable attorneys' fees (as provided above).

17.    Miscellaneous.  This Guaranty, and all acts and transactions hereunder, and the rights and obligations of the parties hereto, shall be governed, construed and interpreted according to the laws of the State of North Carolina; cannot be changed, modified or terminated orally; shall be binding upon Guarantors, and their successors and assigns; and shall inure to the benefit of the Purchaser and his respective heirs, personal representative, successors and assigns.  Section headings have been inserted in this Guaranty as a matter of convenience of reference only, and shall not be used in the interpretation of this Guaranty.  In the event any provision of this Guaranty is deemed unenforceable, this Guaranty shall remain effective and such unenforceable provision shall be deemed deleted.

[SIGNATURES BEGIN ON NEXT PAGE]

Initial

A + Staffing, LLC  Factoring and Security Agreement
Page 24

IN WITNESS WHEREOF, the Guarantors have executed this Guaranty under seal on the day and year first above written.

Name: _____

Mrs. Myrna Ramirez

STATE OF Arizona
COUNTY OF Maricopa

The foregoing instrument was acknowledged before me this 15th day of July, 20 11, by Myrna Ramirez on behalf of A Staffing, LLC. He\she is personally known to me or has produced AZ DL _____ as identification.

_____
Notary Public
Print Name: Claudia Meraz

My Commission expires: Nov. 25, 2014

OFFICIAL SEAL
CLAUDIA MERAZ
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires Nov. 25, 2014

_____ Initial

A + Staffing, LLC  Factoring and Security Agreement
Page 25

IN WITNESS WHEREOF, the Guarantors have executed this Guaranty under seal on the day and year first above written.

Name: _____

_Ms. Anna Abrego_____

STATE OF _CA_

COUNTY OF _San Bernardino_

The foregoing instrument was acknowledged before me this _23_ day of _July_, 20_11_, by _Rhonny Hernandez_ on behalf of _Anna Abrego_____. He/she is personally known to me or has produced _CA Drivi License_ as identification.

_____
Notary Public
Print Name: _Rhonny Hernandez_

My Commission expires: _April 18, 2014_

_____Initial

A + Staffing, LLC  Factoring and Security Agreement
Page 26

IN WITNESS WHEREOF, the Guarantors have executed this Guaranty under seal on the day and year first above written.

Name: _____

Mr. Robert Ramirez

STATE OF AZ

COUNTY OF Maricopa

The foregoing instrument was acknowledged before me this 25th day of July, 2011, by Robert Ramirez on behalf of A+ Staffing, LLC. He\she is personally known to me or has produced AZ DL as identification.

_____
Notary Public
Print Name: Claudia Meraz

My Commission expires: Nov. 25, 2014

OFFICIAL SEAL
CLAUDIA MERAZ
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires Nov. 25, 2014

_____ Initial

A + Staffing, LLC  Factoring and Security Agreement
Page 27

## ADDENDUM A

Administrative Fee Percentage: _____ 3.0% _____

Initial Factoring Fee Period: _____ 30 days _____

Advance Rate: up to _____ 85% _____

Incremental Fee Date: _____ None _____

Incremental Fee Percentage _____ None _____

Minimum Weekly Volume: _____ $5,000 _____

Per Diem: _____ 0.087% after day 30 _____

Per Diem Effective Date: _____ Day 31 _____

Eligibility Period: _____ 90 days _____

Bad Debt Reserve: _____ 1% _____

Additional Reserve Percentage: _____ None _____

Term: _____ twenty four (24) months from the date of the initial advance hereunder

Special Terms and Conditions:    Furthermore, Seller shall provide Purchaser by the 15th day of each month, copies of all bank statement of all Sellers bank accounts.  Seller shall also provide weekly payroll register reporting and monthly financial statements on the disposition of the company.  Purchaser reserves the right to audit Seller at its discretion at the expense of the Seller.  Any subsequent changes in ownership, insurance, or any other outsources services must be submitted for approval to Purchaser.

* For each 0.25% increase in the prime rate of interest, as published in the Wall Street Journal on the day of each month, the administrative fee shall increase 0.017%.

The Guarantors acknowledge the above terms and conditions and have set their hand this _25_ day of
_July_, 20_11_.


_____               _____
Mrs. Myrna Ramirez                              Ms. Anna Abrego

_____               _____
TITLE                                           TITLE

_____
Mr. Robert Ramirez

_____
TITLE

_____ Initial

ADDENDUM A

| | |
|---|---|
| Administrative Fee Percentage: | 3.0% |
| Initial Factoring Fee Period: | 30 days |
| Advance Rate: up to | 85% |
| Incremental Fee Date: | None |
| Incremental Fee Percentage | None |
| Minimum Weekly Volume: | $5,000 |
| Per Diem: | 0.087% after day 30 |
| Per Diem Effective Date: | Day 31 |
| Eligibility Period: | 90 days |
| Bad Debt Reserve: | 1% |
| Additional Reserve Percentage: | None |
| Term: | twenty four (24) months from the date of the initial advance hereunder |

Special Terms and Conditions:     Furthermore, Seller shall provide Purchaser by the 15th day of each month, copies of all bank statement of all Sellers bank accounts.  Seller shall also provide weekly payroll register reporting and monthly financial statements on the disposition of the company.  Purchaser reserves the right to audit Seller at its discretion at the expense of the Seller.  Any subsequent changes in ownership, insurance, or any other outsources services must be submitted for approval to Purchaser.

* For each 0.25% increase in the prime rate of interest, as published in the Wall Street Journal on the day of each month, the administrative fee shall increase 0.017%.

The Guarantors acknowledge the above terms and conditions and have set their hand this _24_ day of
_July_ , 20_11_.

_____
Mrs. Myrna Ramirez

Ms. Anna Abrego

_____
TITLE                          TITLE
                               Owner

_____
Mr. Robert Ramirez

_____
TITLE    Initial

# EXHIBIT "B"

# State of California

## Secretary of State

I, **Debra Bowen** , Secretary of State of the State of California, hereby certify:

That the attached transcript of 3  page(s) was prepared by and in this office from the record on file, of which it purports to be a copy, and that it is full, true and correct.



**IN WITNESS WHEREOF**, I execute this certificate and affix the Great Seal of the State of California this day of

January 23, 2013

Secretary of State

FILE #    117271852650

Document Number:  36284790003

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
MICHELLE JETTEN
(919) 954-0232

B. SEND ACKNOWLEDGMENT TO: (Name and Address)
First Corporate Solutions, Inc.
914 S STREET
Sacramento, CA 95814
USA

DOCUMENT NUMBER: 29169860002
FILING NUMBER: 11-7271852650
FILING DATE: 06/03/2011 09:25
IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names**

| | | | | |
|---|---|---|---|---|
| OR | 1a. ORGANIZATION'S NAME  A+ STAFFING | | | |
| | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 1c. MAILING ADDRESS  3069 CARDAMON ST | CITY  RIALTO | STATE  CA | POSTAL CODE  92376 | COUNTRY  USA |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 1e. TYPE OF ORGANIZATION  GeneralPartnership | 1f. JURISDICTION OF ORGANIZATION  CALIFORNIA | 1g. ORGANIZATIONAL ID#, if any  ☑ NONE |
|---|---|---|---|---|

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names**

| | | | | |
|---|---|---|---|---|
| OR | 2a. ORGANIZATION'S NAME | | | |
| | 2b. INDIVIDUAL'S LAST NAME  RAMIREZ | FIRST NAME  MYRNA | MIDDLE NAME | SUFFIX |

| 2c. MAILING ADDRESS  4534 PARK ST | CITY  LAVEEN | STATE  AZ | POSTAL CODE  85339 | COUNTRY  USA |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#, if any  ☐ NONE |
|---|---|---|---|---|

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)**

| | | | | |
|---|---|---|---|---|
| OR | 3a. ORGANIZATION'S NAME  PROSPERITY FUNDING, INC. | | | |
| | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 3c. MAILING ADDRESS  308-D W MILLBROOK RD SUITE 200 | CITY  RALEIGH | STATE  NC | POSTAL CODE  27609 | COUNTRY  USA |
|---|---|---|---|---|

**4. This FINANCING STATEMENT covers the following collateral:**
All Seller's present and future Accounts, Chattel Paper, Goods (including Inventory and Equipment), Instruments, Investment Property, Documents, and General Intangibles, Letter of Credit Rights, Commercial Tort Claims, Deposit Accounts, and the Proceeds thereof, as such terms are defined in the Code.

5. ALT DESIGNATION: ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

☐ 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS  Attach Addendum [if applicable]

7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]  [optional] ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA
[UCC1-54123]

FILING OFFICE COPY

Page 2

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

| | | |
|---|---|---|
| **9a. ORGANIZATION'S NAME** A+ STAFFING | | |
| OR **9b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME, SUFFIX** |

**10. MISCELLANEOUS:**

DOCUMENT NUMBER: 29169860002
IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names**

| | | | |
|---|---|---|---|
| **11a. ORGANIZATION'S NAME** | | | |
| OR **11b. INDIVIDUAL'S LAST NAME** ABREGO | **FIRST NAME** ANNA | **MIDDLE NAME** | **SUFFIX** |
| **11c. MAILING ADDRESS** 3069 CARDAMON ST | **CITY** RIALTO | **STATE** CA **POSTAL CODE** 92376 | **COUNTRY** USA |
| **11d. SEE INSTRUCTIONS** **ADD'L DEBTOR INFO** | **11e. TYPE OF ORGANIZATION** | **11f. JURISDICTION OF ORGANIZATION** | **11g. ORGANIZATIONAL ID#, if any** □ NONE |

**12. □ ADDITIONAL SECURED PARTY'S or □ ASSIGNOR S/P'S NAME - insert only one name (12a or 12b)**

| | | | |
|---|---|---|---|
| **12a. ORGANIZATION'S NAME** | | | |
| OR **12b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |
| **12c. MAILING ADDRESS** | **CITY** | **STATE** **POSTAL CODE** | **COUNTRY** |

**13. This FINANCING STATEMENT covers □ timber to be cut or □ as-extracted collateral, or is filed as a □ fixture filing.**

**14. Description of real estate:**

**15. Name and address of RECORD OWNER of above-described real estate (if Debtor does not have a record interest):**

**16. Additional collateral description:**

**17. Check only if applicable and check only one box.**
Debtor is a □ Trust or □ Trustee acting with respect to property held in trust or □ Decedent's Estate

**18. Check only if applicable and check only one box.**
□ Debtor is a TRANSMITTING UTILITY
□ Filed in connection with a Manufactured-Home Transaction - effective 30 years
□ Filed in connection with a Public-Finance Transaction - effective 30 years

FILING OFFICE COPY

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

| | |
|---|---|
| **A. NAME & PHONE OF CONTACT AT FILER [optional]**<br>MICHELLE JETTEN<br>(919) 954-0232 | |
| **B. SEND ACKNOWLEDGMENT TO: (Name and Address)**<br>First Corporate Solutions, Inc.<br>914 S STREET<br>Sacramento, CA 95814<br>USA | **DOCUMENT NUMBER: 30045850002**<br>**FILING NUMBER: 11-72815061**<br>**FILING DATE: 08/18/2011 13:00**<br>**IMAGE GENERATED ELECTRONICALLY FOR XML FILING**<br>**THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY** |

**1a. INITIAL FINANCING STATEMENT FILE #**
11-7271852650

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination.

**3.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**4.** ☐ **ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

**5. AMENDMENT (PARTY INFORMATION):** This Amendment affects ☑ Debtor or ☐ Secured Party of record. Check only **one** of these.
Also check **one** of the following three boxes **and** provide appropriate information in items 6 and/or 7.

| ☐ **CHANGE name and/or address:** Please refer to the detailed instructions in regards to changing the name/address of a party. | ☐ **DELETE name:** Give record name to be deleted in item 6a or 6b. | ☑ **ADD name:** Complete item 7a or 7b, and also item 7c |
|---|---|---|

**6. CURRENT RECORD INFORMATION:**

| | | | |
|---|---|---|---|
| **6a. ORGANIZATION'S NAME** | | | |

OR

| | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| **6b. INDIVIDUAL'S LAST NAME** | | | |

**7. CHANGED (NEW) OR ADDED INFORMATION:**

| | | | |
|---|---|---|---|
| **7a. ORGANIZATION'S NAME**<br>A + STAFFING, LLC | | | |

OR

| | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| **7b. INDIVIDUAL'S LAST NAME** | | | |

| **7c. MAILING ADDRESS**<br>3069 CARDAMON ST | **CITY**<br>RIALTO | **STATE**<br>CA | **POSTAL CODE**<br>92376- | **COUNTRY**<br>USA |
|---|---|---|---|---|

| **7d. SEE INSTRUCTIONS** | **ADD'L DEBTOR INFO** | **7e. TYPE OF ORGANIZATION**<br>LimitedLia bilityComp any | **7f. JURISDICTION OF ORGANIZATION**<br>CALIFORN IA | **7g. ORGANIZATIONAL ID#, if any**<br>201116610312  ☐ NONE |
|---|---|---|---|---|

**8. AMENDMENT (COLLATERAL CHANGE): check only one box.**
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this amendment.

| | | | |
|---|---|---|---|
| **a. ORGANIZATION'S NAME**<br>PROSPERITY FUNDING, INC | | | |

OR

| | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| **b. INDIVIDUAL'S LAST NAME** | | | |

**10. OPTIONAL FILER REFERENCE DATA**
[UCC3-54123.1]

FILING OFFICE COPY

# EXHIBIT "C"



# STATE FISH COMPANY

TO:   __Funding Department__                              FROM: <u>State Fish Company</u>

COMPANY:  __Prosperity Funding__                    # OF PAGES (INCLUDING COVER) <u>2</u>

PHONE: _____                DATE: <u>September 22, 2011</u>

FAX: <u>815-550-1922</u>

2194 SIGNAL PLACE, SAN PEDRO, CA. 90731 – TELEPHONE 310-832-2633 – FAX 310-831-2402

State Fish Co. Inc.
CUSTOMER/COMPANY NAME

9-16-11
DATE

2194 Signal Place
ADDRESS

San Pedro, Ca 90731
CITY, POSTAL CODE

Dear Customer:

A+ Staffing is pleased to announce that we have entered into a lending agreement with
Prosperity Funding. Beginning with the date of this letter, please make all payments on
A+ Staffing invoices to Prosperity Funding at the address below:

Prosperity Funding
PO Box 601959
Charlotte, NC 28260
(Payments remitted to any other address will not constitute payment of the invoice)

This letter hereby authorizes and instructs you to remit payment for present and future
invoices directly to Prosperity Funding. This letter notifies you that our invoices have
been assigned to Prosperity Funding for the account of A+ Staffing. Please continue to
remit all payments to the above mentioned address until notified otherwise in writing by
Prosperity Funding.

PLEASE SIGN THIS NOTIFICATION IN ACCEPTANCE OF THE TERMS BELOW
AND FAX IT BACK TO: PROSPERITY FUNDING - 815-550-1922

Company : State Fish Co. Inc

✗ Signature: _____

✗ Name and Title (please print): Kim Mendca, HR Manager

Prosperity Funding may be contacting you to verify the outstanding balance on your
account. Please help us to expedite this transaction by assisting them. Your cooperation
is greatly appreciated and we thank you for your understanding and patience.

Should have any questions concerning this letter or your billing, please call A+ Staffing.

Sincerely,

A+ Staffing:

Signature: Anna Obrega

Name: Anna Abrego

Title: Owner

Prosperity Funding

Signature: _____

Name: _____
Title:

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Central      District of  California

| | |
|---|---|
| PROSPERITY FUNDING, INC., a North Carolina corporation, | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No. |
| STATE FISH CO., INC., a California corporation; CALPACK FOODS LLC, a California limited liability company; and DOES 1-10, inclusive | )    **CV13-03350 -JCG** |
| *Defendant* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*
STATE FISH CO, Inc., a California corporation, 2194 Signal Place, San Pedro, CA 90731; and

CALPACK FOODS LLC, a California limited liability company, 2194 Signal Place, San Pedro, CA 90731

 

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:
Steven N. Kurtz, Esq.
Anne C. Manalili, Esq.
Levinson Arshonsky & Kurtz, LLP
15303 Ventura Boulevard, Suite 1650
Sherman Oaks, CA 91403
(818)382-3434
      If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:   MAY 1 0 2013  _____       _____
                                                     *Signature of Clerk or Deputy Clerk*

AO-440

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4(l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify)*:

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:



## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)

PROSPERITY FUNDING, INC., a North Carolina corporation,

**DEFENDANTS**

STATE FISH CO., INC., a California corporation;
CALPACK FOODS LLC, a California limited liability
company; and DOES 1-10, inclusive

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing
yourself, provide same.)
Steven N. Kurtz, Esq. (SBN 125972)
Anne C. Manalili, Esq. (SBN 193483)
Levinson Arshonsky & Kurtz, LLP
15303 Ventura Blvd., Suite 1650
Sherman Oaks, CA 91403
818-382-3434

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in this State | ☐4 | ☒4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☒5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT: $** 228,584.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

(1-3) Breach of Contract Pursuant to the CA Commercial Code; (4-6) Common Count - Services Rendered; (7-9) Account Stated; and (10) Accounting

**VII. NATURE OF SUIT** (Place an X in one box only.)

OTHER STATUTES: ☐400 State Reapportionment ☐410 Antitrust ☒430 Banks and Banking ☐450 Commerce/ICC Rates/etc. ☐460 Deportation ☐470 Racketeer Influenced and Corrupt Organizations ☐480 Consumer Credit ☐490 Cable/Sat TV ☐810 Selective Service ☐850 Securities/Commodities/Exchange ☐875 Customer Challenge 12 USC 3410 ☐890 Other Statutory Actions ☐891 Agricultural Act ☐892 Economic Stabilization Act ☐893 Environmental Matters ☐894 Energy Allocation Act ☐895 Freedom of Info. Act ☐900 Appeal of Fee Determination Under Equal Access to Justice ☐950 Constitutionality of State Statutes

CONTRACT: ☐110 Insurance ☐120 Marine ☐130 Miller Act ☐140 Negotiable Instrument ☐150 Recovery of Overpayment & Enforcement of Judgment ☐151 Medicare Act ☐152 Recovery of Defaulted Student Loan (Excl. Veterans) ☐153 Recovery of Overpayment of Veteran's Benefits ☐160 Stockholders' Suits ☒190 Other Contract ☐195 Contract Product Liability ☐196 Franchise

REAL PROPERTY: ☐210 Land Condemnation ☐220 Foreclosure ☐230 Rent Lease & Ejectment ☐240 Torts to Land ☐245 Tort Product Liability ☐290 All Other Real Property

TORTS PERSONAL INJURY: ☐310 Airplane ☐315 Airplane Product Liability ☐320 Assault, Libel & Slander ☐330 Fed. Employers' Liability ☐340 Marine ☐345 Marine Product Liability ☐350 Motor Vehicle ☐355 Motor Vehicle Product Liability ☐360 Other Personal Injury ☐362 Personal Injury-Med Malpractice ☐365 Personal Injury-Product Liability ☐368 Asbestos Personal Injury Product Liability

IMMIGRATION: ☐462 Naturalization Application ☐463 Habeas Corpus-Alien Detainee ☐465 Other Immigration Actions

TORTS PERSONAL PROPERTY: ☐370 Other Fraud ☐371 Truth in Lending ☐380 Other Personal Property Damage ☐385 Property Damage Product Liability

BANKRUPTCY: ☐422 Appeal 28 USC 158 ☐423 Withdrawal 28 USC 157

CIVIL RIGHTS: ☐441 Voting ☐442 Employment ☐443 Housing/Accommodations ☐444 Welfare ☐445 American with Disabilities - Employment ☐446 American with Disabilities - Other ☐440 Other Civil Rights

PRISONER PETITIONS: ☐510 Motions to Vacate Sentence Habeas Corpus ☐530 General ☐535 Death Penalty ☐540 Mandamus/Other ☐550 Civil Rights ☐555 Prison Condition

FORFEITURE/PENALTY: ☐610 Agriculture ☐620 Other Food & Drug ☐625 Drug Related Seizure of Property 21 USC 881 ☐630 Liquor Laws ☐640 R.R. & Truck ☐650 Airline Regs ☐660 Occupational Safety/Health ☐690 Other

LABOR: ☐710 Fair Labor Standards Act ☐720 Labor/Mgmt. Relations ☐730 Labor/Mgmt. Reporting & Disclosure Act ☐740 Railway Labor Act ☐790 Other Labor Litigation ☐791 Empl. Ret. Inc. Security Act

PROPERTY RIGHTS: ☐820 Copyrights ☐830 Patent ☐840 Trademark

SOCIAL SECURITY: ☐861 HIA (1395ff) ☐862 Black Lung (923) ☐863 DIWC/DIWW (405(g)) ☐864 SSID Title XVI ☐865 RSI (405(g))

FEDERAL TAX SUITS: ☐870 Taxes (U.S. Plaintiff or Defendant) ☐871 IRS - Third Party 26 USC 7609

CV13 - 03350

**FOR OFFICE USE ONLY:** Case Number:

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)   CIVIL COVER SHEET   Page 1 of 2
2176-002   CCD-JS44

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? [X] No  [ ] Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? [X] No  [ ] Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)

[ ] A.  Arise from the same or closely related transactions, happenings, or events; or

[ ] B.  Call for determination of the same or substantially related or similar questions of law and fact; or

[ ] C.  For other reasons would entail substantial duplication of labor if heard by different judges; or

[ ] D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX.  VENUE:**  (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
[ ]  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | North Carolina |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
[ ]  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles |  |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
     Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles |  |

*  Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X.  SIGNATURE OF ATTORNEY (OR PRO PER):** _(signature)_  Date May 8, 2013
Anne C. Manalili

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |